David M. McCLAIN, Appellant (Defendant below),

v.

STATE of Indiana, Appellee (Plaintiff below).

No. 49S02–9701–CR–00014.

Supreme Court of Indiana.

March 24, 1997.

Rehearing Denied June 6, 1997.

Gregory Bowes, Bowes, Perkins & Hutchinson, P.C., Indianapolis, for Appellant.

Pamela Carter, Attorney General, Andrew L. Hedges, Deputy Attorney General, Indianapolis, for Appellee.

## ON PETITION TO TRANSFER

BOEHM, Justice.

This is an interlocutory appeal from the Marion Superior Court. The question for decision is whether the trial court erred in granting the State's motion in limine excluding expert testimony on sleep disorders and dissociative states because the defendant, David M. McClain, withdrew his insanity defense.[1] The Court of Appeals held that evidence McClain seeks to present on automatism and sleep deprivation is a species of the insanity defense and, accordingly, is subject to the notice requirements of Indiana Code § 35–36–2–1. *McClain v. State,* 670 N.E.2d 911 (Ind.Ct.App.1996). We granted transfer and hold that evidence of automatism bears on the voluntariness of McClain's conduct and is not a subclass of the insanity defense.

### Factual & Procedural Background

On December 20, 1993, McClain was involved in an altercation with police officers in the Broad Ripple section of Indianapolis. McClain is alleged to have struck several officers before being subdued by police. On December 22, 1993, McClain was charged with aggravated battery, two counts of battery against police officers, and two counts of resisting law enforcement. On March 4, 1994, McClain filed a notice of intent to interpose an insanity defense. Discovery revealed that the basis for the defense was sleep deprivation allegedly preventing McClain from forming the necessary intent for the crimes charged. Two days before the altercation with police, McClain flew from Japan to Indianapolis and did not sleep on the flight. McClain further claims to have slept just three hours in the forty-eight hours prior to his arrest.

On July 11, 1995, McClain withdrew his insanity defense, apparently convinced after researching the matter that evidence of "automatism" did not need to be presented as an insanity defense. On the morning trial was scheduled to begin, the court granted the State's motion in limine excluding "any expert witness testimony expressing an opinion about the capacity of the defendant to form criminal intent on the night in question" and "any expert testimony regarding sleep disorders and/or dissociative states." The court held that McClain's evidence related to automatism was a "mental disease or defect" within the meaning of Indiana Code § 35–41–3–6 and therefore had to be presented under the insanity statute. This ruling effectively precluded McClain from presenting evidence of sleep deprivation because he had withdrawn his insanity defense before trial.[2] Recognizing the possibility of having to retry

---

[1] The statute creating the defense commonly referred to as "insanity"—IND.CODE § 35–41–3–6—in fact does not use that term. Rather it speaks of "mental disease or defect." However, we will refer to the "insanity" defense for ease of reference and because the defense is still referred to elsewhere in the criminal code by that name. *See, e.g.,* IND.CODE § 35–36–2–1 (1993).

[2] Indiana Code § 35–36–2–1 requires criminal defendants intending to interpose an insanity defense to give notice to the court before trial.

the case if the ruling was later found to be reversible error, the trial court certified the following question for interlocutory appeal: "Did the trial court err in granting the State's Motion in Limine, excluding evidence of expert testimony about the capacity of the defendant to form criminal intent on the night in question and expert testimony regarding sleep disorders and/or dissociative states, because the [d]efendant had withdrawn the defense of insanity?" For the reasons explained below, we reverse.[3]

## I. Automatism Bears on the Voluntariness of McClain's Conduct

In addressing in this appeal whether evidence of automatism can be presented to show lack of criminal intent and, if so, what procedures govern introduction of that evidence, we write on a clean slate. No Indiana decision has confronted this issue.[4] Automatism has been defined as "the existence in any person of behaviour of which he is unaware and over which he has no conscious control." Donald Blair, *The Medicolegal Aspects of Automatism*, 17 MED. SCI. LAW 167 (1977) (internal quotation marks omitted); *see also* BLACK's LAW DICTIONARY 134 (6th ed. 1990) (automatism is "[b]ehavior performed in a state of mental unconsciousness ... apparently occurring without will, purpose, or reasoned intention"). A seminal British case concisely described automatism as "connoting the state of a person who, though capable of action, is not conscious of what he is doing." *Bratty v. Attorney–General of Northern Ireland,* 3 All E.R. 523, 527 (1961) (internal quotation marks omitted). Automatism manifests itself in a range of conduct, including somnambulism (sleepwalking), hypnotic states, fugues, metabolic disorders, and epilepsy and other convulsions or reflexes. *See generally* Eunice A. Eichelberger, Annotation, *Automatism or Unconsciousness as Defense to Criminal Charge,* 27 A.L.R.4th 1067 (1984) (hereafter *"Automatism"*); Michael J. Davidson & Steve Walters, *United States v. Berri: The Automatism Defense Rears Its Ugly Little Head,* 1993–OCT ARMY LAW. 17 (discussing treatment of automatism defense in military and civilian jurisdictions) (hereafter *"United States v. Berri"*).

McClain argues that his violent behavior towards police was a form of automatism caused by sleep deprivation. He contends that as a result of his condition his acts were not voluntary and therefore he has no criminal responsibility for them. McClain asserts that his condition is not a "mental disease or defect" because it was externally caused and, he claims, is unlikely to recur. The State argues that the trial court properly classified McClain's defense as a mental disease or defect and that McClain, accordingly, cannot also present evidence of automatism to negate voluntariness. Alternatively, the State contends that McClain's altercation with police cannot be described as an involuntary act because his conduct was not a convulsion or reflex.

In the states that have addressed the issue, it is well established that automatism

---

**3.** The following question was also certified: "Should [d]efendant be permitted to reassert the defense of insanity if the Court of Appeals concludes that the trial court properly granted the State's Motion in Limine?" Because we hold that the State's motion should not have been granted, we do not reach the second question.

**4.** In holding that automatism was a species of the insanity defense, the trial court felt bound by *Hollander v. State,* 156 Ind.App. 329, 296 N.E.2d 449 (1973). In that case, a doctor testified that the defendant was in a "fugue" state of mind constituting "severe dissociation," precluding him from forming a criminal intent. *Id.* at 332, 296 N.E.2d at 451. *Hollander* held that it was error to overrule the State's objection to admitting this testimony because an insanity defense had not been pleaded before trial. Although also a case involving an assault on police officers, *Hollander* is not controlling today for several reasons. First, it is not a decision from this Court. Second, the current insanity and voluntary act statutes were not on the books at the time *Hollander* was decided; in fact, the insanity defense at that time was entirely a matter of common law in Indiana. In *Hill v. State,* 252 Ind. 601, 251 N.E.2d 429 (1969), we laid down a framework for the insanity defense that was codified in substance when the Legislature adopted the "mental disease or defect" test in 1976. *See* 1976 Ind. Acts, P.L. 148, § 1, *codified at* IND.CODE § 35-41-3-6 (1993). Assuming *arguendo* that the legal definition of insanity was substantively the same in 1973, *Hollander* did not explain what was meant by a "fugue" state of mind nor why this was a form of insanity. In any event, to the extent inconsistent with this opinion *Hollander* is disapproved.

can be asserted as a defense to a crime.[5] *Automatism*, 27 A.L.R.4th 1067 at § 3(a). Rather than questioning whether automatism is a defense at all, the debate in these states has focused on the manner in which evidence of automatism can be presented. These jurisdictions are split between recognizing insanity and automatism as separate defenses and classifying automatism as a species of the insanity defense. *Id.* at §§ 3(b)–(c) (collecting cases); *United States v. Berri*, 1993–OCT ARMY LAW. at * *18–19 (claiming that distinguishing the two defenses is the majority rule). As explained below, we think the approach required under Indiana's criminal statutes is to distinguish automatism from insanity and allow McClain's evidence to be presented as bearing on the voluntariness of his actions.

Indiana Code § 35–41–2–1(a) provides that "[a] person commits an offense only if he voluntarily engages in conduct in violation of the statute defining the offense." This section was enacted in 1976 pursuant to the recommendations of the Indiana Criminal Law Study Commission (hereafter "Commission"). *See* Ind.Crim.Law Study Comm'n, *Indiana Penal Code Proposed Final Draft* 11 (1974) (hereafter *"Comm'n Report"*). The Commission was established in 1973 by executive order and was given the task of revamping and updating the substantive criminal laws of the state. Because Indiana Code § 35–41–2–1 was modeled on the Commission's recommendations, the Commission's comments on the purpose of the statute are instructive. Before 1976, Indiana's criminal code lacked basic provisions governing culpability. The voluntary act statute was adopted that year in a new section titled "Basis of Liability," which also included *mens rea* definitions of "intentionally," "knowingly" and "recklessly"—terms now in familiar use in criminal cases. *See* 1976 Ind. Acts, P.L. 148, § 1, *codified at* IND.CODE § 35–41–2–2

(1993). The voluntary act statute codified the axiom that voluntariness is a "general element of criminal behavior" and reflected the premise that criminal responsibility "postulates a free agent confronted with a choice between doing right and doing wrong and choosing freely to do wrong." *Comm'n Report* at 11–12 (citation omitted). As the Commission explained: "The term voluntary is used in this Code as meaning behavior that is produced by an act of choice and is capable of being controlled by a human being who is in a conscious state of mind." *Id.* at 12.

The evidence McClain seeks to present on automatism bears on the voluntariness of his actions within the meaning of the statute. In essence McClain claims he was unable to form criminal intent on the night in question due to an automatistic state of mind that precluded voluntary behavior. Although the jury is obviously not required to accept this explanation, permitting McClain to make the argument is consistent with the statute's general purpose that criminal conduct be an "act of choice" by a person in a "conscious state of mind." In so holding, we do not and need not decree the existence of an automatism defense *per se*, only that McClain is entitled to present evidence tending to show whether he acted voluntarily. Evidence of automatism is relevant to the issue of voluntariness. Accordingly, at trial McClain can call expert witnesses and otherwise present evidence of sleep deprivation and automatism within the confines of the Indiana Rules of Evidence. The State is entitled to call its own experts and challenge McClain's evidence as the adversary process allows.[6] As we stated in construing § 35–41–2–1 in *Baird v. State*, 604 N.E.2d 1170, 1176 (Ind.1992): "[O]nce evidence in the record raises the issue of voluntariness, the state must prove the defendant acted voluntarily beyond a reasonable doubt." If McClain's

---

**5.** Exceptions exist for conditions not deemed automatistic in nature. For example, some cases have held that the automatism defense is unavailable if the defendant suffers only from amnesia. We have no quarrel with that view. It is one thing to say a person acted involuntarily, and quite another to say that the person has no memory of the event. WAYNE R. LaFAVE & AUSTIN W. SCOTT, JR., 1 SUBSTANTIVE CRIMINAL LAW § 4.9(b)

(1986); *see also Automatism*, 27 A.L.R.4th 1067 at §§ 6–14 (collecting cases where court denied jury instruction on defense of automatism or unconsciousness).

**6.** Expert testimony of course must meet the requirements of Evidence Rule 702 and any other rules or considerations governing admissibility.

conduct is found to be involuntary, then the State has not proved every element of its case and the law requires an acquittal. *Id.*[7]

## II. Automatism is Not a Species of the Insanity Defense

■ Both the language of the insanity statute and the policies underlying the insanity defense counsel against classifying evidence of automatism as a mental disease or defect. Indiana Code § 35–41–3–6 provides:

(a) A person is not responsible for having engaged in prohibited conduct if, as a result of mental disease or defect, he was unable to appreciate the wrongfulness of the conduct at the time of the offense.

(b) As used in this section, "mental disease or defect" means a severely abnormal mental condition that grossly and demonstrably impairs a person's perception, but the term does not include an abnormality manifested only by repeated unlawful or antisocial conduct.

Read expansively, this statute could encompass a broad range of conduct. As McClain argues, intoxication alters a person's state of mind and perception, but it is not recognized as a form of insanity. Like intoxication, "automatism may ... be manifest in a person with a perfectly healthy mind." *Fulcher v. State*, 633 P.2d 142, 145 (Wyo.1981). While automatistic behavior could be caused by insanity, "unconsciousness at the time of the alleged criminal act need not be the result of a disease or defect of the mind."

*State v. Caddell*, 287 N.C. 266, 215 S.E.2d 348, 360 (1975). The decisions holding that automatism is not a species of the insanity defense have relied on this point and we find it persuasive. *Automatism*, 27 A.L.R.4th 1067 at § 3(b) (collecting cases). In fact, the most recent state supreme court to address the issue distinguished the insanity defense from automatism, for many of the same reasons we do today. *State v. Hinkle*, —— S.E.2d ——, 1996 WL 633860 (W.Va. Oct.31, 1996). Consistent with this view, we hold that McClain's evidence of automatism as pleaded does not need to be presented under the insanity defense. We understand McClain's defense to consist of automatism manifested in a person of sound mind. To the extent involuntary behavior is contended to result from a mental disease or defect, the insanity statute would apply.

Because the Legislature has placed the voluntary act requirement in a different statute from the insanity defense, we discern no legislative intent to merge the automatism and insanity defenses as the State urges us to do in this case. Moreover, such a merger would produce consequences that we believe were not intended by the framers of Indiana's insanity statute. The requirement that criminal defendants in Indiana be forced into commitment proceedings if found "not responsible by reason of insanity" reinforces our conclusion. *See* IND.CODE § 35–36–2–4 (1993) (requiring prosecutor to file petition seeking commitment hearing where defendant found not responsible by reason of in-

---

**7.** Of the cases construing § 35–41–2–1, only *Baird* speaks to the purpose of the statute. There, we held that evidence of an "irresistible impulse" did not require the State to prove that the defendant acted voluntarily because "irresistible impulse" bore on the issue of insanity and not on the voluntariness of the defendant's conduct. *Baird*, 604 N.E.2d at 1176–77. In so stating, we noted examples of involuntary conduct—convulsions and reflexes—given by the Commission in the comments to the proposed section. *Id.* (citing *Comm'n Report* at 12). Relying on *Baird*, the State urges us to limit the availability of the involuntary act statute to convulsions and reflexes. We do not believe such a narrow interpretation was intended by the statute's framers. Indiana Code § 35–41–2–1 was largely patterned on Model Penal Code § 2.01. *Comm'n Report* at 12. However, unlike the Indiana statute, the Model Penal Code enumerates specific examples of involuntary conduct,

including convulsions, reflexes, and bodily movements during unconsciousness or sleep. MODEL PENAL CODE § 2.01(2) (Official Draft 1962). The Court of Appeals here interpreted the Legislature's decision not to adopt the Model Penal Code's specific examples in the Indiana statute as a repudiation of automatism as a separate defense. *McClain*, 670 N.E.2d at 914. If this interpretation were correct, convulsions and reflexes also would not be involuntary acts—a construction that directly conflicts with the Commission's comments. We think a sounder interpretation of the lack of enumerated examples is a legislative intent not to limit application of the statute to only a few situations and to leave room for reasonable judicial development. Our construction today, in any event, is consistent with the well established axiom that penal statutes are strictly construed against the State. *See, e.g., McKnight v. State*, 658 N.E.2d 559, 562 (Ind.1995); *Baird*, 604 N.E.2d at 1190.

sanity). As the Wyoming Supreme Court observed in *Fulcher*, a sane but automatistic defendant forced to plead the insanity defense faces a choice of possible commitment or effectively presenting no defense to the crime. *Fulcher*, 633 P.2d at 146 (construing similar statutory framework). A defendant intending to plead the insanity defense must give notice to the court so that the court can appoint independent experts to examine that defendant's particular psychiatric characteristics and offer an opinion on the validity of the claim. IND.CODE § 35–36–2–2 (1993). For an automatistic defendant, as here, there is no need for independent experts at public expense. The issue turns on a series of historical events and the factual circumstances bearing on the defendant's voluntariness, as opposed to the defendant's mental fitness. Although expert testimony may be helpful, if offered consistent with the Indiana Rules of Evidence, automatism presents an issue qualitatively the same as any other factual determination. There is no special reason to deviate from the normal adversary process of allowing each side to call witnesses and cross-examine those called by the other side.

One important policy underlying the insanity defense is ensuring that mentally-ill criminal defendants receive treatment for their condition. This raises a second and equally important consideration why automatism should not be regarded by the courts as a species of insanity. Although automatism could be the product of a diseased mind in need of treatment and rehabilitation, nothing in the record indicates that McClain presents such a case and McClain does not assert that he does. A "successful" defense resulting in a "not responsible by reason of insanity" verdict would leave the automatistic defendant in custody pending a commitment hearing. IND.CODE § 35–36–2–4 (1993). Consequently, merging the automatism and insanity defenses could result in confinement, at least temporarily, not of the insane but of the sane. This is a significant deprivation of liberty for an automatistic defendant where the outcome of the commitment hearing is a foregone conclusion. Even apart from the defendant's interest, in the absence of grounds for believing an automatistic defendant suffers from a recurring mental disorder, it is reasonable to infer that legislators did not intend to occupy the courts with commitment hearings for defendants whose sanity is not in question.

 The State does not claim that McClain suffered from a mental disorder at the time of the alleged offenses, only that his "medical condition" and "medical testimony" related to his ability to form a criminal intent must be presented under the insanity provisions. The statute, however, does not deal with every "medical condition." Rather, it turns on the presence of a "mental disease or defect," which connotes a disorder naturally occurring or condition of the mind, as opposed to an induced condition (whether self-induced or otherwise). McClain seems uncertain exactly how to describe his allegedly automatistic condition, calling it "sleep deprivation," "sleep violence," "sleepwalking" and even a state of sleep itself. The gravamen of McClain's argument, however, is that but for a lack of sleep over the course of several days, he would not have been in this state at the time he allegedly involuntarily struck police officers on December 20, 1993. McClain's condition thus is more analogous to intoxication than insanity because it had an external cause. Unlike intoxication, the Legislature has presented no specific standard for dealing with or assessing this defense. *Compare* IND.CODE § 35–41–3–5 (1993). Automatism is simply a denial of one element—voluntary action—that the Legislature has required for most crimes. It is not a disease or defect within the meaning of Indiana Code § 35–41–3–6. Accordingly, McClain was not required to give notice to the court of his intent to interpose an insanity defense. As we have explained, his evidence as pleaded goes to the voluntariness of his actions.

### Conclusion

This case is remanded for proceedings in the trial court consistent with this opinion.

SHEPARD, C.J., and DICKSON, SULLIVAN and SELBY, JJ., concur.