Pamela A. REED, Appellant–Defendant,

v.

STATE of Indiana, Appellee–Plaintiff.

No. 32A01–9709–CR–287.

Court of Appeals of Indiana.

April 27, 1998.

---

Ken A. Elmendorf, Elmendorf & Meyer, Brownsburg, for Appellant–Defendant.

Jeffrey A. Modisett, Attorney General, Rachel Zaffrann, Deputy Attorney General, Indianapolis, for Appellee–Plaintiff.

## OPINION

BAKER, Judge.

Today we are asked to determine whether a defendant may offer evidence that she suffered from a small stroke, known as a transient ischemic attack (TIA), to show that she did not voluntarily or knowingly commit theft. Appellant-defendant Pamela A. Reed challenges her conviction for Theft,[1] a Class D felony, after she took several items from the local Wal–Mart store without paying for them. On appeal, Reed contends that the trial court erred by preventing her from offering evidence of a TIA to show that she did not voluntarily or knowingly exercise unauthorized control over Wal–Mart's property.

### FACTS[2]

On November 1, 1996, Reed entered a Wal–Mart store in Hendricks County, grabbed a rubbermaid tote off the shelf and placed it in her shopping cart. Reed then proceeded through the store and placed several items into the tote, including an HP Scan Jet, a type of computer printer, a Back–UPS Office, ink jet labels, some computer software packages and some matchbox cars. Reed then left the store without paying for approximately $500.00 of merchandise.

Immediately thereafter, the loss prevention officer for Wal–Mart, Patty Waidlich, who had observed Reed take the items, followed her out of the store. After detaining Reed in the parking lot, Waidlich discovered the computer equipment and the toys concealed in the tote. Waidlich then brought Reed back into the store and took her to the security office for questioning. At some point during the questioning, Reed told Waidlich that she believed that she had paid for the items and that she did not understand why she was being detained. Record at 362. Reed also informed Waidlich that she had a letter in her car which excused her act of shoplifting. R. at 367. As Waidlich continued with the investigation, Reed informed Waidlich that she felt sick to her stomach. R. at 362. Waidlich provided Reed with a trash can and finished the required paperwork regarding the stolen items.

Waidlich then called the Plainfield Police Department to take Reed into custody. Immediately thereafter, Reed informed Waidlich that she thought she was going to pass out. After Waidlich helped Reed lay down on the floor, Reed again mentioned the letter in her car. Waidlich, however, did not attempt to find the letter. Soon after the police arrived, an ambulance was called and Reed was transported to the hospital.

On November 4, 1996, Reed was charged with theft, a class D felony. On January 8, 1997, Reed filed a motion to dismiss the charges, alleging that, at the time she took the items from the Wal–Mart store, she was suffering from a TIA which prevented her from forming the requisite ability to commit theft. R. at 39–44. In support of her motion, Reed submitted a letter from her primary care physician, Dr. Roger C. Collicott, who explained that Reed suffered from a Protein S Deficiency which affects her blood clotting mechanism and which caused her to suffer a stroke in 1991. Dr. Collicott then indicated that, since the first stroke, Reed had suffered from a few small strokes known as transient ischemic attacks which cause her to experience confusion, aphasia and the ina-

---

1. Ind Code § 35–43–4–2.

2. Oral argument was held in this cause on February 18, 1998, in Indianapolis, Indiana.

bility to communicate verbally. Dr. Collicott then concluded that, in his opinion, Reed had suffered from a TIA on the day Reed committed theft. R. at 43. Reed also introduced a letter from Dr. Collicott's medical assistant, Pamela DeMoss, and Reed's supervisor and clinical psychologist, Dr. Brian Teel. Each indicated that Reed exhibited unusual behavior and confusion on the day she committed the theft.[3] R. at 40–42. However, the trial court denied Reed's motion.

On February 14, 1997, the State filed a motion in limine, seeking to prohibit Reed from raising her medical condition of TIA as an affirmative defense. Specifically, the State contended that, to the extent TIA caused a mental impairment, it could not be raised as a defense to theft unless the mental condition amounted to a mental disease or defect under the insanity statute. R. at 73. In response, Reed contended that, because she was not alleging insanity, she should not be precluded from raising a defense based on a medical condition. She also contended that she had an absolute right to present a defense to show that she did not "knowingly" or "intentionally" exert unauthorized control over Wal–Mart's property. R. at 77. The court, however, granted the State's motion to exclude evidence of TIA.

During the jury trial, which commenced on February 18, 1997, Reed's counsel sought relief from the motion in limine by making several offers to prove. Specifically, Reed attempted to offer evidence of Reed's medical condition through several witnesses, including Dr. Teel and Dr. Collicott. The court, however, denied Reed relief and prohibited her from presenting evidence of TIA. R. at 404. During trial, Reed also introduced into evidence Exhibit K, a letter from Dr. Collicott, who indicated that Reed suffered from strokes which caused her to become confused and disoriented. The court, however, admitted the letter to show only that the

letter, to which Reed referred while detained in the Wal–Mart security office, existed. However, the court did not permit the letter to be read into evidence or to be sent to the jury during deliberations. Finally, several of Reed's witnesses testified that, the day before and the day of the theft, Reed appeared confused, disoriented and suffered from memory lapses. However, in its final instructions, the court instructed the jury to disregard that evidence in determining Reed's guilt or innocence. R. at 850. Thereafter, Reed was convicted as charged. She now appeals.

## DISCUSSION AND DECISION

### I. Evidence of TIA

Reed contends that the trial court erroneously prohibited her from presenting evidence of TIA. Specifically, Reed argues that her medical condition was relevant to show that her actions were not voluntary and to show that she did not have the "requisite ability to knowingly exert unauthorized control over [Wal–Mart's] property." Appellant's Brief at 16. Because the trial court denied her the opportunity to present evidence of TIA, she contends that she was unable to put on a full defense.

A trial court is accorded broad discretion in determining the admissibility of evidence. *Schwestak v. State*, 674 N.E.2d 962, 965 (Ind.1996). Even if a trial court erroneously excludes admissible evidence, we will not reverse a defendant's conviction unless her substantial rights have been affected. *Id.*

Initially, we note that the parties disagree on whether Reed was required to offer evidence of TIA under the insanity statute. The State contends that, because TIA is a form of temporary insanity, Reed was required, but failed, to comply with the notice provisions of the insanity defense.[4] There-

---

**3.** In particular, DeMoss stated that when Reed visited Dr. Collicott's office on November 1, 1996, she appeared "far off" and "confused" and left the office without making a return appointment. R. at 40. Dr. Teel noted that, on October 31, 1996, Reed had an "extremely bad headache" which forced her to leave work early. Dr. Teel further contended that the following day,

Reed submitted a report which contained so many errors that she was required to redo the report. R. at 41.

**4.** According to IND.CODE § 35–36–2–1, a defendant, who is charged with a felony and intends to interpose an insanity defense, must file notice of

fore, the State contends the trial court properly excluded the evidence. In response, Reed argues that, because TIA is a medical condition and not a mental disease or defect, she was not required to raise her defense under the insanity statute.[5] In order to resolve this dispute, we turn to the language of the insanity statute.

### A. Insanity Statute

The insanity defense is set forth at IND. CODE § 35–41–3–6 and provides that a defendant is not responsible for prohibited conduct if, due to a "mental disease or defect," she is unable to appreciate the wrongfulness of her conduct. I.C. § 35–41–3–6(a). Under the statute, a "mental disease or defect" is defined as a "severely abnormal mental condition that grossly and demonstrably impairs a person's perception." I.C. § 35–41–3–6(b). Thus, in order to rely on insanity as a defense, a defendant must demonstrate not only that her perception was impaired, but also that the impairment was caused by a severely abnormal mental condition. 22 C.J.S. § 101; See also McClain v. State, 678 N.E.2d 104, 109 (Ind.1997) ("The [insanity] statute . . . does not deal with every 'medical condition.' Rather, it turns on the presence of a 'mental disease or defect.' "). As a result, we must determine whether TIA is a mental disease or defect under the insanity statute.

Although our research has revealed no case which addresses this precise question, recently, our supreme court had an opportunity to determine a similar question in McClain v. State, 678 N.E.2d 104 (Ind.1997). In McClain, the defendant sought to introduce evidence that he was in an automatistic state when he allegedly struck several police offers. Id. Before trial, the defendant raised evidence of his automatism under the insanity statute. Id. However, prior to trial, he withdrew his insanity defense, apparently believing that evidence of automatism was not evidence of insanity. Id. The trial court and this court on appeal found that

automatism was considered a species of the insanity defense and, therefore, had to be raised in compliance with the notice provisions of the insanity statute. Id.

On transfer, our supreme court disagreed. Specifically, the court found that, although automatism, which was behavior performed in a state of mental unconsciousness, could be caused by insanity, "unconsciousness at the time of the alleged criminal act need not be the result of a disease or defect of the mind." Id. at 106, 108 (quoting State v. Caddell, 287 N.C. 266, 215 S.E.2d 348 (1975)). The court then concluded that, based on the defendant's pleadings, his defense consisted of "automatism manifested in a person of sound mind." Id. at 108. As a result, the court concluded that the defendant was not required to present evidence of automatism under the insanity statute. Id. at 109. We now turn to the facts of this case.

In his offer to prove, Dr. Teel testified that TIA is a medical condition, commonly known as a small stroke, where constricted blood vessels in the brain and a decreased pulse rate cause a person to lose oxygen to the brain. R. at 380. Dr. Teel further stated that, as a result of the condition, a TIA patient might become confused, lose the ability to exercise good judgment and be unable to determine how to get "from point A to point B." R. at 383–85.

Similar to the defendant in McClain, Reed is arguing that her inability to voluntarily and knowingly commit theft was caused by a physical condition, manifested in a person of a sound mind. Although that physical condition affected her mental state, allegedly causing her to become confused, disoriented, and to suffer memory lapses, these symptoms were not the result of a severely abnormal mental condition. Therefore, Reed's mental impairment was not a mental disease or defect. See also 22 C.J.S. § 98 (while defen-

---

her intent with the trial court no later than twenty days before the omnibus date.

5. During oral argument, counsel for Reed specifically stated that, after concluding that TIA was

not a mental disease or defect, he deliberately chose not to offer evidence of TIA under the insanity statute.

dant's unconsciousness may be related to insanity, it may be totally separate from it). Furthermore, although Dr. Teel further testified that a person suffering from TIA could enter a state of dementia and TIA could be considered a type of temporary insanity, R. at 383, 388, his opinion regarding the psychological effects of TIA is not binding on a trial court's determination of whether a person is legally insane. Rather, legal insanity is determined solely by whether a mental condition is a "mental disease or defect" under the statute. However, as we have already concluded, Reed's mental impairment was not the result of a diseased mind. As a result, she was not required to give the State notice of her intent to raise evidence of TIA under the insanity statute.

## B. Relevancy of TIA

Having concluded that Reed was not required to raise TIA under the insanity statute, we must still determine whether evidence of TIA was relevant and, therefore, admissible at trial. According to Reed, evidence of her medical condition was relevant to show that she did not voluntarily or knowingly exert unauthorized control over Wal-Mart's property.

Relevant evidence is that which makes the "existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Ind.Evidence Rule 401. All relevant evidence is admissible. Ind.Evidence R. 402. In determining whether evidence is relevant and admissible, this court must determine whether the evidence tends to prove or disprove a material fact in the case or sheds any light on the guilt or innocence of the accused. *Carnahan v. State,* 681 N.E.2d 1164, 1166 (Ind.Ct.App.1997). Thus, we must determine if evidence of TIA tends to prove or disprove that Reed voluntarily or knowingly committed theft.

As stated above, the *McClain* court found that automatism is a state a person enters, where, although he may be capable of action, he is not conscious of what he is doing. *McClain,* 678 N.E.2d at 106. The court also found that automatism manifests itself in many forms, including sleepwalking, hypnotic states, fugues, metabolic disorders, and epilepsy and other convulsions or reflexes. *Id.* The *McClain* court then concluded that, because the State must prove that a defendant engages in criminal conduct, voluntarily or by "act of choice, in a conscious state of mind," automatism is relevant to determine whether a defendant voluntarily commits an offense. *Id.* at 107.

Here, the record reveals that, during the offer to prove, Dr. Teel testified that, "depending on the state of dementia" the TIA patient might be "totally unaware of [her] surroundings and yet repeatedly going [sic] through common tasks that we've done a hundred times a thousand times," enabling her to walk through the tasks but "without the awareness of what [she's] doing." R. at 385. This is precisely the type of unconscious behavior to which the *McClain* court referred. As a result, we find that evidence of TIA was relevant to determine whether Reed voluntarily committed theft. Similarly, we conclude that to the extent this unconscious, involuntary behavior prevented her from forming the requisite intent to commit theft, it is relevant to show that she did not knowingly commit theft.[6] Therefore, the trial court abused its discretion by prohibiting Reed from offering evidence of TIA. We

---

6. Having reached this conclusion, we are not unaware that our supreme court has previously held that a defendant is not permitted to offer evidence of diminished capacity, a mental abnormality which does not rise to the level of insanity, but which affects the defendant's capacity to form criminal intent. *See Holmes v. State,* 671 N.E.2d 841, 857–58 (Ind.1996) ("In Indiana there is no defense of diminished capacity."), *cert. denied,* —— U.S. ——, 118 S.Ct. 137, 139 L.Ed.2d 85 (1997); *Cardine v. State,* 475 N.E.2d 696, 698 (Ind.1985) ("Indiana has not recognized the separate legal defense of diminished capacity."). Although Reed may have unartfully phrased her argument by contending that she did not have the ability to knowingly commit theft, we do not believe that Reed was attempting to raise a diminished capacity defense. Rather, as stated above, Reed was merely attempting to show that she did not voluntarily commit theft.

further conclude that, because the TIA evidence would have tended to negate essential elements of the State's case-in-chief, the trial court's ruling, excluding the TIA evidence, affected Reed's substantial rights. As a result, we reverse Reed's conviction and remand to the trial court for a new trial.[7]

Reed's conviction is reversed and this cause is remanded for a new trial.

NAJAM and RILEY, JJ., concur.

7. We also note that the State argues the trial court properly excluded Dr. Teel's testimony regarding TIA because it was not based on reliable scientific principles. However, having found that Reed is entitled to a new trial, the trial court, on remand, will have the opportunity to reevaluate the admissibility of the testimony in light of our determination that TIA evidence is relevant. Thus, we need not address the State's contention. For the same reason, we need not address Reed's argument concerning the admissibility of Exhibit K.