**Jason Paul DAVIDSON, Appellant–Defendant,**

v.

**STATE of Indiana, Appellee–Plaintiff.**

**No. 43A03–0312–CR–522.**

Court of Appeals of Indiana.

April 13, 2005.

Transfer Granted June 1, 2005.

---

☞1500

James H. Voyles, Jennifer M. Lukemeyer, Voyles Zahn Paul Hogan & Merriman, Indianapolis, IN, Attorneys for Appellant.

Steve Carter, Attorney General of Indiana, Michael Gene Worden, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

MATHIAS, Judge.

Jason Davidson ("Davidson") was convicted of murder[1] in Kosciusko Circuit Court. Davidson appeals, raising the following dispositive issue for review: Whether a material element was omitted from Davidson's jury instructions. Concluding a material element was omitted, we reverse and remand for a new trial.

### Facts and Procedural History

Davidson married Alicia Creekmore ("Alicia") in 1995, and children were born to the marriage. At some unknown time, Alicia began an Internet affair with Samuel Creekmore ("Creekmore"), a soldier stationed in Hawaii. Eventually, Alicia met Creekmore in person in San Francisco, and the two met several more times. When Davidson discovered that Alicia met Creekmore at a Fort Wayne hotel, Alicia and Davidson divorced.

Shortly after divorcing Davidson, Alicia married Creekmore, who remained stationed overseas. Despite Alicia's remarriage, she continued to have sexual relations with Davidson and even vacationed with him and their children in April of 2002.

On May 2, 2002, Creekmore visited Alicia. During this visit, Alicia, Creekmore, and Alicia's friend, Christina Barden ("Barden"), went to a local restaurant and encountered Barden's ex-husband. Alicia immediately telephoned Davidson to inform him of the details of this confrontation. However, Barden's ex-husband left the restaurant and told Davidson his ver-

---

1. Ind.Code § 35–42–1–1 (1998).

sion of the encounter in person. Davidson and Alicia continued to exchange telephone calls as the evening wore on, and Alicia rejected Davidson's request to meet with him.

After Alicia and Creekmore returned to Alicia's residence and retired upstairs to Alicia's bedroom, Davidson once again called Alicia on his cell phone. Creekmore was irritated by this call and consequently left Alicia's bedroom. When Alicia informed Davidson that his call upset Creekmore, Davidson asked Alicia what Creekmore was doing, and Alicia informed Davidson that Creekmore had gone downstairs.

Davidson then instructed Alicia to "hang on for a second," and immediately thereafter, Alicia heard gunshots. Alicia ran downstairs and observed Davidson holding a gun and Creekmore lying on the floor. Davidson stated he was not going to prison and left shortly before the police arrived. Creekmore later died from multiple gunshot wounds.

On May 6, 2002, the State charged Davidson with murder. On September 9, 2003, the jury found Davidson guilty as charged. Davidson was sentenced to fifty-five years executed in the Department of Correction. Davidson now appeals.

### Discussion and Decision

Davidson's proposed Final Jury Instruction No. 1 states in part:

> A person commits a crime only if he voluntarily engages in conduct in violation of the statute defining the crime.
>
> The term voluntarily means behavior that is produced by an act of choice and is capable of being controlled by a human being who is in a conscious state of mind.

Appellant's App. p. 64.

The trial court sustained the State's objection to this proposed instruction in favor of Final Instruction No. 11, which states in part:

> A person commits a crime only if he voluntarily engages in conduct in violation of the statute defining the crime.
>
> The elements of culpability, or that is the voluntary conduct with which the Defendant is accused, is conduct that was engaged in "knowingly" or "intentionally."

Appellant's App. p. 90.

Davidson's proposed Final Jury Instruction No. 3 states in part:

> To convict the Defendant, the State must have proved each of the following elements:
>
> The Defendant:
>
> (1) Knowingly or intentionally
>
> (2) and voluntarily
>
> (3) killed
>
> (4) Samuel Creekmore

Appellant's App. p. 66. The trial court sustained the State's objection to this instruction, choosing instead to read its Final Jury Instruction No. 5, which states in part:

> To convict the Defendant, the State must have proved each of the following elements:
>
> The Defendant:
>
> (1) knowingly or intentionally
>
> (2) killed
>
> (3) Samuel Creekmore

Appellant's App. p. 84.

Davidson contends that the final instructions, as they were given to the jury, constitute reversible error.

### A. Waiver

The State first asserts Davidson waived appellate review because he failed to include the transcript of the jury instructions in his record. Br. of Appellee at

7. Appellate review may be waived if a defendant does not include a transcript of the appropriate proceedings. *Reed v. State*, 702 N.E.2d 685, 689–90 (Ind.1998).

However, Davidson's transcript included a court reporter certification indicating that all jury instructions were read, filed in the court file, and made part of the record. Tr. p. 639. Davidson included the final jury instructions and his tendered instructions in his Appendix. Appellant's App. pp. 63–97. Finally, Davidson's trial attorney's objection to the instructions at issue is included in the transcript. Tr. pp. 685–86.

The State does not assert that the omission of the transcribed reading of the jury instructions hampers the adjudication of this issue. Br. of Appellee at 7. Indeed, the State quotes both Davidson's tendered instructions and those actually given. Br. of Appellee at 8–10. Because Davidson's record does not hinder appellate review, waiver is inappropriate.

### B. *Jury Instructions and Reversible Error: Abuse of Discretion*

■ The purpose of a jury instruction is to inform the jury of the law applicable to the facts without misleading it and to enable the jury to comprehend the case clearly and arrive at a just, fair, and correct verdict. *Overstreet v. State*, 783 N.E.2d 1140, 1163 (Ind.2003). Instruction of the jury is reviewed for an abuse of discretion. *Id.* A trial court erroneously refuses to give a tendered instruction if: (1) the instruction correctly sets out the law, (2) evidence supports the instruction, and (3) the substance of the tendered instruction is not covered by other instructions. *Id.*

### 1. *Davidson's tendered instructions correctly set out the law*

■ The "voluntariness requirement" is codified in Indiana Code section 35–41–2–

1(a), which states in part, "[a] person commits an offense only if he voluntarily engages in conduct in violation of the statute defining the offense." Ind.Code § 35–41–2–1 (1998). It is axiomatic that the *actus reus* of "voluntariness" is "a general element of criminal behavior." *McClain v. State*, 678 N.E.2d 104, 107 (Ind.1997).

■ Voluntariness is defined as behavior "produced by an act of choice and is capable of being controlled by a human being who is in a conscious state of mind." *McClain*, 678 N.E.2d at 107. Davidson's proposed jury instructions quote this definition, and his instructions are an accurate statement of the law.

### 2. *The evidence supports Davidson's proposed jury instruction*

■ In most cases, there is no issue of voluntariness, and the State's burden is carried by proof of commission of the act itself. *Baird v. State*, 604 N.E.2d 1170, 1176 (Ind.1992). However, once evidence in the record raises the issue of voluntariness, the State must prove the defendant acted voluntarily beyond a reasonable doubt. *Id.*

■ The State contends Davidson failed to raise the issue of voluntariness because he did not present evidence indicating his actions were the result of a convulsion, reflex, or similar activity. Br. of Appellee at 10–11 (citing *Baird*, 604 N.E.2d at 1177). However, questionable voluntariness is not limited to instances of convulsive or reflexive behavior. *McClain*, 678 N.E.2d at 107. Rather, voluntariness reflects the affirmative premise that criminal responsibility "postulates a free agent confronted with a choice between doing right and doing wrong and choosing freely to do wrong." *Id.* Voluntary behavior is behavior produced by an act of choice and

is capable of being controlled by a human being who is in a conscious state of mind. *Id.*

Here, the trial court admitted evidence pertaining to Davidson's defense that a combination of factors caused him to act involuntarily. Tr. pp. 219–20. Testimony specifically alleged that (1) due to a combination of Zoloft and Ambien, Davidson "could not appreciate the wrongfulness of his conduct;" (2) Davidson was in "a disassociative state;" (3) Davidson was "neuro-hijacked" causing him to act without thinking; and (4) Davidson could not "consciously or unconsciously control" his actions. Tr. pp. 351, 391, 393, 476. This evidence clearly speaks to the *McClain* standard that voluntary behavior is the product of choice and is capable of being controlled by a human being who is in a conscious state of mind. *See McClain,* 678 N.E.2d at 107.

The State also claims that Davidson merely raised an involuntary intoxication defense through this evidence. However, the State points us to no rule of law that forbids a defendant from challenging his *actus reus* and claiming involuntary intoxication.[2]

Final Jury Instruction No. 11 shows that the trial court clearly believed Davidson's evidence challenged his *actus reus,* and we agree. Appellant's App. p. 90.

### 3. *Other instructions*

The State contends the substance of Davidson's instructions was adequately covered by the trial court's Final Instruction No 11, which states in part:

A person commits a crime only if he voluntarily engages in conduct in violation of the statute defining the crime.

The elements of culpability, or that is the voluntary conduct with which the Defendant is accused is conduct that was engaged in "knowingly" or "intentionally."

Appellant's App. p. 90.

Because jury instructions are to be viewed as a whole and voluntariness is addressed in Final Instruction No. 11, it is initially attractive to believe that the issue of voluntariness was adequately treated. But, there remain serious problems with the totality of the trial court's instructions that together constitute reversible error. First, and most importantly, Final Instruction No. 5 lists the elements of murder and excludes the element of "voluntarily." Final Instruction No. 5 instructs the jury that it must find that "the State proved" its inadequate list of elements "beyond a reasonable doubt." And, Final Instruction No. 11, which contains the jury's only instruction on voluntariness, does not advise the jury members that they must find the State proved Davidson acted voluntarily beyond a reasonable doubt. Appellant's App. pp. 84, 90.

Another important problem with Final Instruction No. 11 is that it fails to adequately define "voluntariness." Appellant's App. p. 90. Once voluntariness is properly raised, as it was in this case, failure to define "voluntarily" in accord with *McClain* is tantamount to lessening the State's burden of proof. Final Instruction No. 11's statement of, "[t]he elements of culpability, or that is the voluntary conduct with which the Defendant is accused, is conduct that was engaged in knowingly

---

**2.** It should be noted that *McClain's* circumstances also appeared to involve the use of mind-altering substances. McClain went to a party and a pub before his altercation and

was carrying a beer bottle at the time of his altercation. *McClain v. State,* 670 N.E.2d 911, 912 (Ind.Ct.App.1996), *vacated on transfer.*

or intentionally" also could cause the jury to confuse the *actus reus* of "voluntarily" with the *mens rea* of "knowingly" or "intentionally."

 Defendants have a constitutional guarantee to have every element of their offense proved beyond a reasonable doubt by the State. *In re Winship*, 397 U.S. 358, 364, 377–78, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970). This principle is so essential to our system of justice it is referred to as "the fundamental principle." *See United States v. Unser*, 165 F.3d 755, 764 (10th Cir.1999).[3]

### Conclusion

Davidson's jury instructions relieved the State of its burden of proving an element of Davidson's charged offense beyond a reasonable doubt and constituted reversible error.

Reversed and remanded for a new trial.

BAILEY, J., and SULLIVAN, J., concur.

---

**3.** At first glance, it might appear as though Davidson's claim closely resembles an insanity defense as provided for under Indiana Code section 35–41–3–6. However, Davidson is not asserting he has the severely abnormal mental condition necessary to trigger an insanity defense. *See* Ind.Code § 35–41–3–6(b). Rather, Davidson is asserting that the medication he was taking in combination with other factors placed him in a temporary disassociative state that rendered his actions involuntary. Indeed, were Davidson to claim that his actions were caused by insanity, he would only be permitted to challenge the State's

allegation under Indiana's insanity statute. *See Marley v. State*, 747 N.E.2d 1123, 1128 (Ind.2001).

On remand, the jury is free to reject Davidson's claim that he acted involuntarily. However, voluntariness is a separate and distinct defense from that of insanity. *McClain*, 678 N.E.2d at 107–08. Davidson claims his actions were the product of a temporary condition caused by external influences; as such he was entitled to his instruction as tendered. *See Reed v. State*, 693 N.E.2d 988, 992 (Ind. Ct.App.1998), *trans. denied* (cited with approval in *Marley*, 747 N.E.2d at 1128).