## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Dec 15 2017, 9:16 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Scott Howard Duerring
South Bend, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Angela N. Sanchez
Supervising Deputy Attorney
General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| David W. Erickson,<br>*Appellant-Defendant,*<br><br>v.<br><br>State of Indiana,<br>*Appellee-Plaintiff* | December 15, 2017<br><br>Court of Appeals Case No.<br>20A03-1701-PC-140<br><br>Appeal from the Elkhart Superior Court<br><br>The Honorable Teresa L. Cataldo, Judge<br><br>Trial Court Cause No.<br>20D03-1603-PC-9 |

**Altice, Judge.**

## Case Summary

[1] David W. Erickson appeals from the denial of his petition for post-conviction relief (PCR Petition) following his guilty plea to attempted murder. He asserts that the post-conviction court erred in rejecting his claim of ineffective assistance of trial counsel.

[2] We affirm.

## Facts & Procedural History

[3] On September 13, 2007, Erickson pled guilty to attempted murder, a Class A felony. As the factual basis, he admitted that he intended to kill T.P. and that he attempted to do so by stabbing her with a knife. At the time, Erickson was represented by Attorney Brent Zook.[1] Subsequent to the entry of his guilty plea, Attorney Zook asked the court to expedite a mental health examination of Erickson by Dr. Paul Yoder, indicating the desire to have the examination done prior to sentencing. Additionally, Erickson waived his right to be sentenced within thirty days to accommodate the scheduling of the examination. The trial court held a sentencing hearing on November 29, 2007, prior to which the court reviewed Dr. Yoder's psychological report. For purposes of sentencing, Attorney Zook relied upon Dr. Yoder's findings that Erickson had a reduced ability to cope with stress and merely snapped, causing him to commit the crime, in arguing for a twenty-five-year sentence, an extensive period of

---

[1] Attorney Zook passed away in 2010.

probation, and treatment. At the conclusion of the hearing, the court sentenced Erickson to forty years imprisonment.

[4] On March 7, 2016, Erickson, pro se, filed a PCR Petition alleging trial counsel ineffectiveness. The post-conviction court held an evidentiary hearing on October 21, 2016. On December 22, 2016, the post-conviction court issued findings of fact and conclusions of law denying Erickson's request for post-conviction relief. Erickson now appeals. Additional facts will be provided as necessary.

## Discussion & Decision

[5] Erickson argues that his trial counsel rendered ineffective assistance. Because there was no trial, Erickson's claim relates to his trial counsel's performance in assisting and advising him prior to the entry of his guilty plea. Erickson asserts that his counsel never met with him and never discussed the evidence or possible defenses to the charge of attempted murder prior to his guilty plea.

[6] In a post-conviction proceeding, the petitioner bears the burden of establishing grounds for relief by a preponderance of the evidence. *Bethea v. State*, 983 N.E.2d 1134, 1138 (Ind. 2013). "When appealing the denial of post-conviction relief, the petitioner stands in the position of one appealing from a negative judgment." *Id.* (quoting *Fisher v. State*, 810 N.E.2d 674, 679 (Ind. 2004)). In order to prevail, the petitioner must demonstrate that the evidence as a whole leads unerringly and unmistakably to a conclusion opposite that reached by the post-conviction court. *Id.* Although we do not defer to a post-conviction

court's legal conclusions, we will reverse its findings and judgment only upon a showing of clear error, i.e., "that which leaves us with a definite and firm conviction that a mistake has been made." *Id*. (quoting *Ben-Yisrayl v. State*, 729 N.E.2d 102, 106 (Ind. 2000)).

[7] A petitioner will prevail on a claim of ineffective assistance of trial counsel only upon a showing that counsel's performance fell below an objective standard of reasonableness and that the deficient performance prejudiced the petitioner. *Id*. Because a petitioner must prove both deficient performance and resulting prejudice, the failure to prove either defeats such a claim. *See Young v. State*, 746 N.E.2d 920, 927 (Ind. 2001).

[8] The petitioner must first demonstrate deficient performance, which is "representation that fell below an objective standard of reasonableness, committing errors so serious that the defendant did not have the 'counsel' guaranteed by the Sixth Amendment." *Bethea*, 983 N.E.2d at 1138 (quoting *McCary v. State*, 761 N.E.2d 389, 392 (Ind. 2002)). There is a strong presumption that trial counsel rendered adequate service. *Bethea*, 983 N.E.2d at 1139.

[9] With regard to the prejudice inquiry, the petitioner must establish "a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different." *Id*. Where, as here, the defendant has entered a guilty plea, he is entitled to relief only if he proves that (1) he would not have pled guilty absent the ineffective assistance of counsel; and (2) there is a reasonable

probability that he would have received a more favorable result in a trial. *Segura v. State*, 749 N.E.2d 496, 507 (Ind. 2001); *Jeffries v. State*, 966 N.E.2d 773, 779 (Ind. Ct. App. 2012), *trans. denied*. "A reasonable probability is one that is sufficient to undermine confidence in the outcome." *Kubsch v. State*, 934 N.E.2d 1138, 1147 (Ind. 2010) (quoting *Strickland v. Washington*, 466 U.S. 668, 694 (1984)).

[10] Erickson claims that his trial counsel failed to advise him of the defense of involuntariness—i.e., that he had a viable defense of automatism. As explained by our Supreme Court, "[a]utomatism has been defined as the existence in any person of behaviour of which he is unaware and over which he has no conscious control." *McClain v. State*, 678 N.E.2d 104, 106 (Ind. 1997) (quotations and citations omitted). This state involves a person who "though capable of action, is not conscious of what he is doing." *Id.* (quotations and citation omitted). Automatism can manifest itself in a range of conduct, including "somnambulism (sleepwalking), hypnotic states, fugues, metabolic disorders, and epilepsy and other convulsions or reflexes." *Id.*

[11] In support of his claim that automatism was a viable defense, Erickson points to his own statements made weeks or months after the crime in which he claimed that he blacked out at the moment of the attack. He contends that Dr. Yoder's psychological evaluation further supports his defense because Dr. Yoder concluded that he lacked intent to commit the crime. In so arguing, Erickson ignores or mischaracterizes the record. At most, the record supports the conclusion that Erickson acted without extensive premeditation and later

blocked the brutal moment of the crime from his memory. Neither of these circumstances, however, supports a claim that he did not act voluntarily at the time he committed the crime.

[12]   When arrested shortly after the crime, Erickson gave a detailed description of his actions before, during, and immediately thereafter. At no point did he claim that he had blacked out. To the contrary, he was clearly capable of recalling and recounting the events of the night and his actions. Erickson detailed his interactions with his wife through text messages and phone conversations and how he became upset. He also detailed how he took three-year-old T.P. by the hair and buttocks and threw her on the floor and then retrieved a knife from the kitchen and stabbed her in the abdomen. Erickson recalled seeing organs protruding from T.P.'s abdomen and how he then placed her in the bathtub. Erickson explained that he retrieved another knife before leaving the apartment and that he intended to kill himself, which suggests he was aware of the gravity of the crime he had just committed. Given the detail Erickson provided soon after he committed the offense, his brief blackout, which claim arose only after he had been incarcerated for some time, reflects, at most, only a loss of memory after the crime, not his state of mind at the time he committed the crime.

[13]   Likewise, Erickson mischaracterizes Dr. Yoder's report. Dr. Yoder did not conclude, as Erickson suggests, that Erickson lacked the specific intent to kill T.P. at the time of the crime. Dr. Yoder merely observed that there was no evidence of significant premeditated intent to kill "at least prior to the 'heat of the moment.'" *Exhibit Vol. 2, Exhibit E* at 23. Dr. Yoder also acknowledged

that Erickson's belated claim of a blackout was inconsistent with his earlier statements to police. While he could not rule out the possibility of a blackout, Dr. Yoder noted that Erickson performed a complex series of actions in moving through several different rooms in the apartment during his attack on T.P. Dr. Yoder indicated that a "rage related blackout would be more plausible" if the attack had been a spontaneous occurrence in one room only while next to the knives at the time he was arguing with his wife on the phone. *Exhibit Vol. 2, Exhibit E* at 12. Dr. Yoder opined that Erickson's later claim of a blackout "might suggest a more complex form of amnesia if there is other data to support such a conclusion." *Id*. It does not appear, however, that Dr. Yoder found such other evidence for that conclusion.

[14] Erickson's claim essentially boils down to an asserted inability to recall the events long after the crime, not a claim that he was involuntarily unable to consciously control or be aware of his actions as he performed them. In short, Erickson has failed to establish that under the facts of this case, automatism was a viable defense to the charge of attempted murder. Thus, Erickson cannot establish that trial counsel was ineffective for failing to recognize and advise him of such defense.

[15] The post-conviction court did not err in denying Erickson's request for post-conviction relief based on his claim of ineffective assistance of counsel.

[16] Judgment affirmed.

May, J. and Vaidik, C. J., concur.