Filed Oct. 31, 1883.

———————

No. 11,135.

SAGE *v.* THE STATE.

CRIMINAL LAW.—*Insanity.*—There is, according to the law of this State, no condition intermediate between sanity and insanity, which, though not excusing crime, may mitigate it. R. S. 1881, sections 1285, 1764, 1765. But independently of the plea of insanity in a criminal case, the defendant may show his general physical and mental condition at the time of the commission of the offence.

SAME.—*Evidence.— Witness.—Opinion.*—A witness, not an expert, upon testifying to acquaintance with and frequently seeing the person whose sanity is in question, during a period of two years, may, without stating other facts, give his opinion concerning the question of sanity.

From the Blackford Circuit Court.

*J. Cantwell, S. W. Cantwell, W. A. Bonham* and *W. H. Carroll,* for appellant.

*F. T. Hord,* Attorney General, *C. W. Watkins,* Prosecuting Attorney, *J. Noonan* and *B. G. Shinn,* for the State.

NIBLACK, C. J.—This was a prosecution for murder in the first degree.

The indictment charged that the appellant, Eliza Sage, on the 18th day of June, 1882, feloniously, and with premeditated malice, killed and murdered one Harry Cunningham by throwing him into water and drowning him.

The appellant pleaded in writing: *First.* That she was not guilty as charged. *Secondly.* That at the time of committing the act charged as a crime she was of unsound mind.

The prosecuting attorney replied in denial of the plea of insanity. A jury found the appellant guilty of murder in the first degree, and fixed her punishment at imprisonment in the penal department of the Indiana Reformatory for Women and Girls during her life. A new trial being first denied, there was judgment upon the verdict.

It was made to appear by the evidence that Harry Cunningham, the person charged to have been murdered, was the illegitimate child of the appellant, whose maiden name was Cunningham, and was about sixteen months old at the time of his death; that the appellant was, at that time, about three months advanced in pregnancy resulting from illicit intercourse with one John Sage, who was willing, and had previously offered, to marry her if she could in some way get rid of the child, Harry.

At the inquest held by the coroner, the appellant made a confession to the effect that at the time and at the county charged, she took the child from her place of residence in Hartford City, a distance of over a mile, and threw it into a stream of running water, a short distance above where its body was found a few days later, for the purpose of drowning it, and that she had not since seen the child; that her motive in so causing the child to be drowned was to get rid of it as an impediment to her marriage with Sage. This confession was read in evidence at the trial, and there was no controversy as to the time, place and manner in which the child came to his death. It was also made to appear that the appellant and Sage were married the night after the child was drowned.

Evidence was introduced as to the physical as well as the mental condition of the appellant before, at the time of, and immediately after the alleged murder. Expert as well as non-expert witnesses testified as to her supposed mental condition during those periods of time. There was a conflict in the

evidence as between the persons composing both of these classes of witnesses. It was practically conceded that for some time before the child was drowned her health was somewhat capricious as a result of her physicial condition during that time; also, that at some times she was quite despondent, and at other times excitable and irritable, the conflict having reference mainly to the alleged unsoundness of her mind.

Annie E. Diskey was called as a witness for the State, and testified " I have been acquainted with the defendant for two years. There were two lots between my house and where she lived. I have frequently seen her prior to June 18th,. 1882, washing and hoeing, and passing my house." The prosecuting attorney then asked the witness " From what you have testified to, what is your opinion as to the sanity or insanity of the defendant on the 18th day of June, 1882 ?" The appellant objected to the witness answering this question, upon the ground that the facts she had testified to were not sufficient to justify her in expressing any opinion as a. non-expert witness upon her, the appellant's, mental condition, but the court overruled the objection and the witness answered " I think she was of sound mind."

Counsel for the appellant admit the law to be that non-expert witnesses may, in this State, express an opinion upon the mental soundness of other persons, based upon facts already sworn to by them, but argue that the facts testified to as above were too shadowy and unsubstantial to base any such an opinion upon.

The question is one concerning which no definite rule seems ever to have been formulated, but we feel justified in saying that where the witness has had an acquaintance with the person under enquiry, or has had conversations, business dealings, or social intercourse with him, he may express an opinion as to his mental condition, and the value of that opinion is a question for the jury. *Leach* v. *Prebster*, 39 Ind. 492; *Sutherland* v. *Hankins*, 56 Ind. 343; *Colee* v. *State*, 75 Ind. 511.

Applying this general proposition to the case before us, we see no error in the admission of the evidence complained of.

Other non-expert witnesses were introduced and examined by the State and permitted to express opinions as to the supposed mental soundness of the appellant under circumstances similar to those attending the testimony of Annie E. Diskey, but what we have said, in its practical application, also disposes of the several questions made upon the admission of the opinions of these witnesses.

The court instructed the jury very fully as to what was necessary to make out the crimes of murder in the first degree, murder in the second degree, and manslaughter, respectively; also, as to the nature and peculiarities of the defence of insanity in a case like this, saying to the jury, in that connection, that when established it was a complete defence, and that, if upon a full consideration of all the evidence, there remained a reasonable doubt of the appellant's sanity, they should find her not guilty. When the court concluded its instructions, counsel for the appellant asked to have three additional instructions given. The first had relation to the subject of reasonable doubts in such a case as this. The second and third to partial insanity as a mitigating circumstance merely in certain cases, both involving substantially the same principle in their application to the same class of cases.

The court gave the first instruction thus asked on behalf of the appellant, and refused to give the second and third. The second may be considered a specimen of both instructions and was as follows:

" If you find that the decedent Harry Cunningham came to his death at the hands of the defendant, at the county of Blackford, and State of Indiana, you may consider the evidence as to the state of mind of the defendant, and her physical condition, and if, when all the evidence shall be adduced before you, you find that the defendant, at the time the killing was done, was not wholly insane, though partially so, you may find her guilty of a less degree of crime than that charged

in the indictment, and find her guilty of murder in the second degree, or manslaughter."

Sections 1764 and 1765, R. S. 1881, having reference to insanity as a defence in prosecutions for crime, use the phrases "insanity" and "of unsound mind" as convertible terms, and as, consequently, meaning the same condition of the mind.

Section 1285, R. S. 1881, *supra*, declares that "The phrase 'of unsound mind' includes idiots, *non-compotes*, lunatics, and distracted persons."

The term "insanity," therefore, under the statutes of this State, includes every species of organic mental derangement, whether of a mild or violent form, and excludes every other condition of the mind. It follows that there is, in our State, no middle ground between "sanity" and "insanity," and that as regards their mental condition, in those respects, we have but two classes of people, the "sane" and the "insane." Actual insanity, however partial it may be, is, consequently, with us a defence, and not a mitigating circumstance, in a prosecution for a crime.

As we construe them, the instructions refused were less favorable to the appellant than those given by the court; at all events, the instructions not given were inconsistent with the statutory provisions of this State on the subject of insanity, and were hence correctly refused. The doctrine announced by Wharton on Criminal Law, vol. 1, section 57 a, as regards partial insanity as a mitigating element in the degrees of crime, can not be recognized as of binding authority in this State. *Willett* v. *Porter*, 42 Ind. 250; *Eggers* v. *Eggers*, 57 Ind. 461.

Independently of any question of insanity the defendant in a criminal cause has the right to have his general physical as well as his mental condition at the time of the commission of the supposed crime explained to the jury, so as to put them in possession of all the facts connected with the transaction, and the better to enable them to judge of its character; but

when insanity is relied upon as a shield against punishment, it must be specially pleaded. R. S. 1881, section 1764, *supra.*

The appellant, being a poor person, was defended at the trial by counsel assigned her by the circuit court. She now asks this court to make an allowance to her attorneys for services rendered by them upon this appeal. That request can not be granted, for reasons assigned in the case of *Stout* v. *State,* 90 Ind. 1. The judgment is affirmed, with costs.

Filed Oct. 20, 1883.