

IN THE

# Court of Appeals of Indiana

State of Indiana,

*Appellant-Plaintiff*

v.

Shianne Brooks-Brown,

*Appellee-Defendant*



FILED

Oct 16 2024, 9:17 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

---

October 16, 2024

Court of Appeals Case No.
24A-CR-627

Interlocutory Appeal from the Carroll Circuit Court

The Honorable Benjamin A. Diener, Judge

Trial Court Cause No.
08C01-2106-MR-1

---

**Opinion by Judge Mathias**
Judge Bailey concurs with separate opinion.
Chief Judge Altice dissents with separate opinion.

**Mathias, Judge.**

[1] Shianne Brooks-Brown alleges that she is a victim of human sexual trafficking. When one of her alleged traffickers set her up with a John[1] near Flora, Indiana, the trafficker robbed and murdered the John. The State does not believe that Brooks-Brown is the victim of human sexual trafficking and has charged her as an accomplice to that robbery and murder. She has been incarcerated on those charges since June 2021.

[2] Brooks-Brown filed a witness list that made it clear that she intended to argue that she did not have the mens rea required to commit the alleged offenses due to the circumstances and associated trauma of being the alleged victim of human sexual trafficking. The State responded with a motion in limine to exclude any such evidence on the ground that a defendant's challenge to her mens rea may only be made under Indiana's insanity defense. The trial court denied the State's request to exclude the evidence, but the court certified its order for interlocutory appeal, which we accepted.

[3] We affirm the trial court's judgment. Brooks-Brown is not asserting that she engaged in otherwise proscribed conduct because of a mental disease or defect. Nor is she asserting that her alleged victimization by human traffickers is an effect of battery, which in some circumstances also requires, by statute, alleging

---

[1] A "John" is "a sex worker's client." *John*, Merriam-Webster, https://www.merriam-webster.com/dictionary/john (last visited Sept. 30, 2024).

an insanity defense. Rather, Brooks-Brown is alleging that her actions were not done knowingly or intentionally but only out of acquiescence to her traffickers.

[4] There is no statute on point for this scenario, and, indeed, related statutes reflect conflicting legislative intents. Accordingly, we turn to our common law to resolve this appeal. And Indiana law is unambiguous that the mens rea for a criminal offense requires the fact-finder to determine the defendant's subjective state of mind at the time of the alleged offense. As Brooks-Brown's proffered evidence is relevant to her subjective state of mind, we affirm the trial court's denial of the State's pretrial motion to exclude Brooks-Brown's evidence.

## Facts and Procedural History

[5] The "facts" relevant to this pretrial interlocutory appeal are limited. Indeed, as there has been no assessment of the parties' evidence before a fact-finder, all factual assertions by both parties are at this stage allegations.

### *The probable cause affidavit*

[6] Both parties rely on the probable cause affidavit to establish the State's foundation for its charges against Brooks-Brown. According to that affidavit, shortly after 5:00 a.m. on June 16, 2021, Joshua and Sarah Barns of Flora called local police officers to report an unresponsive male on their couch with a "traumatic physical injury to his face." Appellant's App. Vol. 2, p. 24. Officers arrived and identified the man as Willie Lee Smith, Jr. Paramedics transported Smith to a hospital in Lafayette. He died there two days later, and the cause of his death was identified as blunt force trauma to the head.

[7] The circumstances at the scene of the Barnses' residence "strongly indicated that Smith was robbed and assaulted near his vehicle," which was parked nearby. *Id.* at 24-25. Based on security footage, officers came to suspect "three people at Jennifer Deans['s] residence [who] may [have been] involved with the incident," namely, Tyrone Leftridge, Brooks-Brown, and a third person. *Id.* at 25. In the afternoon of June 16, officers located Leftridge and Brooks-Brown, and they both agreed to speak with officers at the police station.

[8] There, Leftridge initially denied any knowledge of the incident, but he then admitted to knowing what had happened. He stated that "the plan was to lure Smith to the location." *Id.* at 25. When Smith arrived, "Leftridge was nearby hiding behind a garage." *Id.* Leftridge stated that he heard another person "attack Smith." *Id.* At that point, Leftridge asked to leave the police station. Meanwhile, Brooks-Brown told officers that "Leftridge had told her not to talk to the police because he had done something bad . . . ." *Id.* Officers then arrested Leftridge.

[9] On the morning of June 17, Leftridge made a recorded phone call from the jail. In that call, "Leftridge admitted he had hit the guy with a baseball bat . . . ." *Id.* Later that day, officers again spoke with Brooks-Brown. She told officers that, "on the morning of the 16th, Leftridge used her social media app on her iPhone named Meet-me" to "broadcast[] her information to those logged on." *Id.* She then received a message "from one individual," Smith, "who was coming to Flora" to meet with her. *Id.* Brooks-Brown told officers that, at that point, "Leftridge . . . told her the arrangement was for her to have sex with this person

for $80." *Id.* Meanwhile, "Leftridge said he was going to hide around the other side of a nearby building and watch." *Id.*

[10] Brooks-Brown informed the officers that, as Smith approached the chosen location and got out of his car "expecting to have sex with her," "Leftridge came running out from behind the garage and struck [Smith] in the head twice with a baseball bat." *Id.* at 26. Brooks-Brown stated that she "turned and ran to the Deans['] residence." *Id.* Leftridge arrived shortly thereafter with "cash in denominations of $20 bills . . . ." *Id.*

### The State's charges against Leftridge, Dean, and Brooks-Brown

[11] The State charged Leftridge and Jennifer Dean with felony murder. Leftridge pleaded guilty, and a jury found Dean guilty. Brooks-Brown testified against Dean at Dean's trial. On appeal, we affirmed Dean's conviction and ensuing sentence. *Dean v. State*, 222 N.E.3d 976, 980 (Ind. Ct. App. 2023), *trans. denied*.

[12] The State also charged Brooks-Brown as an accomplice to the robbery and felony murder of Smith, and she has been incarcerated on those charges since June 2021. The State's witness list identifies both Leftridge and Dean as witnesses against Brooks-Brown. Appellant's App. Vol. 2, p. 48. In May 2022, based in part on the manner in which Brooks-Brown presented herself when she testified against Dean, Brooks-Brown's appointed counsel requested the court to order a psychological evaluation of Brooks-Brown. *Id.* at 52. The trial court granted that request over the State's objection.

[13]　Although the probable cause affidavit does not say so explicitly, the plain implication from the affidavit is that Brooks-Brown was at the scene of Smith's robbery and murder as an apparent prostitute. Indeed, the State expressly concedes as much on appeal, stating that Brooks-Brown knowingly or intentionally participated in "lur[ing]" Smith "to the scene under the false pretenses of an anticipated act of prostitution." Appellant's Br. at 14. However, although the State concedes that the charges at issue arose out of an act of prostitution,[2] the State has not charged Brooks-Brown with prostitution.

### Brooks-Brown's proffered expert evidence

[14]　Elizabeth Schutz, a licensed professional counselor in the State of Texas and proffered expert in human trafficking and exploitation, conducted multiple interviews with Brooks-Brown, which included the use of validated screening tools that measure different impacts of trauma. Schutz also reviewed Brooks-Brown's medical history and statements made in the course of the instant proceedings. Schutz concluded that Brooks-Brown is "a victim of trafficking in persons for the purpose of commercial sexual activity by force, fraud[,] or coercion." Appellant's App. Vol. 2, p. 99. In particular, Schutz found that "Dean trafficked [Brooks-Brown] through trauma-coerced attachment common for those who have suffered prior sexual assault as [Brooks-Brown] had." Id.

---

[2] An act of prostitution occurs when sexual intercourse is offered for money, not the act of intercourse itself. As Indiana Code section 35-45-4-2(a)(1) makes clear, "[a] person at least eighteen (18) years of age who knowingly or intentionally . . . performs, *or offers or agrees to perform*, sexual intercourse or other sexual conduct . . . for money . . . commits prostitution, a Class A misdemeanor." (Emphasis added.) The offense is a Level 6 felony if the person has two prior convictions under that statute. *Id.*

Schutz further found that "Dean also preyed upon [Brooks-Brown's] intellectual disabilities" and "trafficked [Brooks-Brown] by use of psychological manipulation and threats about her family and about the police." *Id.*

[15]     Regarding the events of June 16, Schutz found:

> At the time of the crime[s, Brooks-Brown] was under the direct control of her trafficker, Jennifer Dean[,] as well as under the control of an abuse partner[, Leftridge], whom Jennifer Dean had introduced [Brooks-Brown] to. [Leftridge] physical[ly] and emotionally abused [Brooks-Brown], including severe choking on multiple occasions resulting in loss of consciousness.
>
> In my expert opinion[,] the criminal conduct charged against [Brooks-Brown] resulted directly from her own victimization as a sex trafficking victim. . . .

*Id.* Schutz expounded on her opinion as follows:

> [Brooks-Brown] was a trafficking victim at the time the homicide occurred. She was only at the scene of this crime due to her own victimization and the power and control excerpted [sic] over her by both Jennifer Dean and [Leftridge]. She was in no way responsible for or involved in this crime but for her status as a victim of human trafficking . . . . In fact[,] due to her own victimization, [Brooks-Brown] repressed severe trauma and terror to appear acquiescent and even complicit in the crime because any indication of noncompliance would invite life-threatening violence and abuse against her and possibly her child. The fawn response demonstrated by [Brooks-Brown] is a learned response by victims to avoid further abuse by pleasing or acquiescing to the offender. [Brooks-Brown's] reports of dissociation and night terrors are supported by the results of my assessments and

consistent with someone who has experienced severe trauma and is a victim herself.

*Id.* at 106.

### *The State's motion in limine*

[16] In July 2023, Brooks-Brown filed an amended witness list and identified Schutz and Stephanie Richard, another proffered expert in human trafficking, as witnesses for her defense. The State filed a motion in limine to exclude:

> 6. Any attempt to have Stephanie Richard and/or Elizabeth Schutz testify on behalf of the Defendant as to whether or not the Defendant is a victim of sexual human trafficking as it is not relevant to any element of the offenses and it is not an affirmative defense under IC 35-41-3.

> 7. Any reference to the Defendant as a victim of sexual human trafficking as it is not relevant to any element of the offenses and it is not an affirmative defense under IC 35-41-3.

*Id.* at 206 (citations omitted). In an accompanying brief, the State argued that Brooks-Brown's evidence of her as an alleged victim of human trafficking should be excluded because she "has not filed the appropriate notice or followed the appropriate procedure" for an insanity defense to challenge her mens rea. *Id.* at 155. In a blunt responsive brief, Brooks-Brown stated in relevant part that her evidence was relevant and probative to demonstrating whether she had "acted 'knowingly or intentionally,'" as the State would be required to prove at trial. *Id.* at 161.

[17] The trial court denied the State's request to exclude Brooks-Brown's experts and any other evidence that she is an alleged victim of human trafficking. The court then certified its order for interlocutory appeal, which we accepted.[3] This interlocutory appeal ensued.

## Standard of Review

[18] The issues in this appeal present questions of law, which we review de novo. *E.g.*, *Church v. State*, 189 N.E.3d 580, 585 (Ind. 2022). Specifically, the parties' arguments require us to interpret various statutes and to determine the law underlying the State's demand to exclude Brooks-Brown's proffered evidence. As our Supreme Court has made clear:

> In doing so, we begin with the statutory language itself. *Powell v. State*, 151 N.E.3d 256, 265 (Ind. 2020). We read the "words in their plain and ordinary meaning, taking into account the structure of the statute as a whole." *Town of Linden v. Birge*, 204 N.E.3d 229, 237 (Ind. 2023) (internal quotation and citation omitted). We presume the General Assembly "intended for the statutory language to be applied in a logical manner consistent with the statute's underlying policy and goals." *Id.* (internal quotation and citation omitted). We are mindful "of what the statute says and what it doesn't say" and "avoid interpretations that depend on selective reading of individual words that lead to irrational and disharmonizing results." *Id.* (internal quotation and citation omitted). Our ultimate goal is to "to determine and

---

[3] The trial court has stayed proceedings pending the resolution of this appeal.

give effect to the legislature's intent." *Id.* (internal quotation and citation omitted).

*Spells v. State*, 225 N.E.3d 767, 772 (Ind. 2024).

## Discussion and Decision

[19] The State has charged Brooks-Brown under a theory of accomplice liability for the offenses of robbery and felony murder. A defendant may be found guilty as an accomplice if the defendant "knowingly or intentionally" aided, induced, or caused another person to commit an alleged offense. I.C. § 35-41-2-4. "A person engages in conduct 'knowingly' if, when he engages in the conduct, he is aware of a high probability that he is doing so." I.C. § 35-41-2-2(b). And "[a] person engages in conduct 'intentionally' if, when he engages in the conduct, it is his conscious objective to do so." I.C. § 35-41-2-2(a).

[20] The central question in this appeal is whether Brooks-Brown may present evidence at trial that challenges the State's allegations that she acted knowingly or intentionally as an accomplice to the robbery and felony murder of Smith. According to the State, any such argument by Brooks-Brown must be made in accordance with Indiana's insanity defense.[4] Brooks-Brown, on the other hand,

---

[4] In its brief on appeal, the State also argues that the defenses of duress and involuntariness are not available to Brooks-Brown, and Brooks-Brown does not argue otherwise. The defense of duress requires the defendant to show an "instant and imminent" threat of serious bodily injury to the defendant or to a third party, which Brooks-Brown has not alleged. *See Murrell v. State*, 960 N.E.2d 854, 857 (Ind. Ct. App. 2012) (citing *Love v. State*, 271 Ind. 473, 393 N.E.2d 178, 179 (1979)); *see also* I.C. § 35-41-3-8(a). Nor has she claimed that her actions were involuntary, i.e., that she was not in conscious control of her body. *See McClain v. State*, 678 N.E.2d 104, 107 (Ind. 1997). Accordingly, neither of these arguments by the State is relevant, and we do not consider them further.

asserts that the insanity defense is limited to specific types of mental diseases or defects, which is not her putative defense. Rather, her putative defense is that she did not act knowingly or intentionally, not that she acted pursuant to a mental disease or defect.

[21] Brooks-Brown's putative defense does not fit neatly into any statutory defense. But it is plainly not an insanity defense. We therefore conclude, in the absence of clear legislative direction to the contrary, that Brooks-Brown's proffered evidence is relevant to the fact-finder's determination of her subjective state of mind underlying the alleged offenses.

## 1.1 Brooks-Brown's putative defense is not an insanity defense.

[22] We initially consider the State's contention that Brooks-Brown's evidence is inadmissible except through an insanity defense. Addressing this issue requires an understanding of Indiana's defense of insanity and the related defense of effects of battery. We therefore begin with the insanity defense under Indiana Code section 35-41-3-6, which provides as follows:

> (a) A person is not responsible for having engaged in prohibited conduct if, as a result of mental disease or defect, he was unable to appreciate the wrongfulness of the conduct at the time of the offense.

> (b) As used in this section, "mental disease or defect" means a severely abnormal mental condition that grossly and demonstrably impairs a person's perception, but the term does

not include an abnormality manifested only by repeated unlawful
or antisocial conduct.

[23] When the defendant in a felony criminal case intends to interpose the defense of insanity, he or she must file a notice of that intent with the trial court no later than twenty days before the omnibus date. I.C. § 35-36-2-1. However, the court may permit the notice to be filed "at any time before the commencement of the trial" when doing so is "in the interest of justice" and supported by "a showing of good cause." *Id.* There is no dispute that Brooks-Brown neither filed a timely notice of an intent to interpose an insanity defense nor has she requested the trial court to permit her to file that notice belatedly.

[24] Our Supreme Court has long cautioned against attempts by the State to pigeonhole all challenges to a defendant's mens rea into the defense of insanity. In *McClain v. State*, 678 N.E.2d 104 (Ind. 1997), our Supreme Court considered a nearly identical argument to the argument being made by the State here, albeit with respect to the defense of involuntariness. As our Supreme Court explained:

> Both the language of the insanity statute and the policies underlying the insanity defense counsel against classifying evidence of automatism as a mental disease or defect. . . .
>
> Read expansively, [the insanity] statute could encompass a broad range of conduct. *As [the defendant] argues, intoxication alters a person's state of mind and perception, but it is not recognized as a form of insanity. Like intoxication, "automatism may . . . be manifest in a person with a perfectly healthy mind."* Fulcher v. State, 633 P.2d 142, 145 (Wyo.1981). While automatistic behavior could be caused by insanity, "unconsciousness at the time of the alleged criminal act

need not be the result of a disease or defect of the mind." *State v. Caddell*, 287 N.C. 266, 215 S.E.2d 348, 360 (1975). The decisions holding that automatism is not a species of the insanity defense have relied on this point and we find it persuasive. Automatism, 27 A.L.R.4th 1067 at § 3(b) (collecting cases). . . . Consistent with this view, we hold that [the defendant's] evidence of automatism as pleaded does not need to be presented under the insanity defense. We understand [the defendant's] defense to consist of automatism manifested in a person of sound mind. To the extent involuntary behavior is contended to result from a mental disease or defect, the insanity statute would apply.

*Because the Legislature has placed the voluntary act requirement in a different statute from the insanity defense, we discern no legislative intent to merge the automatism and insanity defenses* as the State urges us to do in this case. Moreover, such a merger would produce consequences that we believe were not intended by the framers of Indiana's insanity statute. The requirement that criminal defendants in Indiana be forced into commitment proceedings if found "not responsible by reason of insanity" reinforces our conclusion. *See* [I.C.] § 35-36-2-4 (1993) (requiring prosecutor to file petition seeking commitment hearing where defendant found not responsible by reason of insanity). As the Wyoming Supreme Court observed in *Fulcher*, a sane but automatistic defendant forced to plead the insanity defense faces a choice of possible commitment or effectively presenting no defense to the crime. *Fulcher*, 633 P.2d at 146 (construing similar statutory framework). A defendant intending to plead the insanity defense must give notice to the court so that the court can appoint independent experts to examine that defendant's particular psychiatric characteristics and offer an opinion on the validity of the claim. [I.C.] § 35-36-2-2 (1993). For an automatistic defendant, as here, there is no need for independent experts at public expense. The issue turns on a series of historical events and the factual circumstances bearing on the defendant's voluntariness, as opposed to the defendant's mental fitness. Although expert

testimony may be helpful, if offered consistent with the Indiana Rules of Evidence, automatism presents an issue qualitatively the same as any other factual determination. There is no special reason to deviate from the normal adversary process of allowing each side to call witnesses and cross-examine those called by the other side.

One important policy underlying the insanity defense is ensuring that mentally-ill criminal defendants receive treatment for their condition. This raises a second and equally important consideration why automatism should not be regarded by the courts as a species of insanity. Although automatism could be the product of a diseased mind in need of treatment and rehabilitation, nothing in the record indicates that [the defendant] presents such a case and [the defendant] does not assert that he does. A "successful" defense resulting in a "not responsible by reason of insanity" verdict would leave the automatistic defendant in custody pending a commitment hearing. [I.C.] § 35-36-2-4 (1993). Consequently, *merging the automatism and insanity defenses could result in confinement, at least temporarily, not of the insane but of the sane*. This is a significant deprivation of liberty for an automatistic defendant where the outcome of the commitment hearing is a foregone conclusion. Even apart from the defendant's interest, in the absence of grounds for believing an automatistic defendant suffers from a recurring mental disorder, it is reasonable to infer that legislators did not intend to occupy the courts with commitment hearings for defendants whose sanity is not in question.

*The State does not claim that [the defendant] suffered from a mental disorder at the time of the alleged offenses, only that his "medical condition" and "medical testimony" related to his ability to form a criminal intent must be presented under the insanity provisions. The statute, however, does not deal with every "medical condition." Rather, it turns on the presence of a "mental disease or defect," which connotes a disorder naturally occurring or condition of the mind, as opposed to an*

*induced condition (whether self-induced or otherwise).* [The defendant] seems uncertain exactly how to describe his allegedly automatistic condition, calling it "sleep deprivation," "sleep violence," "sleepwalking" and even a state of sleep itself. The gravamen of [his] argument, however, is that but for a lack of sleep over the course of several days, he would not have been in this state at the time he allegedly involuntarily struck police officers on December 20, 1993. *[The defendant's] condition thus is more analogous to intoxication than insanity because it had an external cause.* Unlike intoxication, the Legislature has presented no specific standard for dealing with or assessing this defense. *Compare* [I.C.] § 35-41-3-5 (1993). Automatism is simply a denial of one element—voluntary action—that the Legislature has required for most crimes. It is not a disease or defect within the meaning of Indiana Code § 35-41-3-6. . . .

*Id.* at 108-09 (emphases added).

[25] Around the same time as *McClain*, our Court was asked in *Barrett v. State*, 675 N.E.2d 1112, 1113 (Ind. Ct. App. 1996), *trans. denied*, to determine "whether testimony regarding Battered Women's Syndrome is relevant to the issue of a defendant's intent to commit a crime." The State had charged the defendant with Class B felony neglect of a dependent after her four-year-old child died at the hands of her live-in boyfriend. She sought to present expert testimony that she suffered from battered women's syndrome, which we described as "a cluster of symptomatic behaviors that women exhibit after they have lived in an environment of trauma and abuse for a period of time." *Id.* at 1115 n.3 (quotation marks omitted). In particular, she argued that that evidence "was relevant to show that she did not knowingly or intentionally neglect her child." *Id.* at 1115. The trial court excluded her evidence on the theory that evidence

relating to battered women's syndrome is available only under a theory of self-defense against the perpetrator of the abuse.

[26] We reversed the trial court's judgment and held that the evidence was relevant. As we explained:

> As part of its burden of proof, the State must show that the accused was *subjectively* aware of a high probability that she placed the dependent in a dangerous situation. *Proof of this subjective awareness requires resort to inferential reasoning to ascertain the accused's mental state. Therefore, evidence or testimony regarding the accused's mental state is relevant to determine whether the accused knowingly or intentionally placed the dependent in a dangerous situation.*
>
> Here, [the defendant] offered the testimony of Gail Beaton, a social worker, to explain how [battered women's syndrome] can affect a person's state of mind and perception of danger to her dependent. This testimony was relevant and necessary to determine [the defendant's] mental state and, therefore, whether she acted knowingly or intentionally in neglecting her dependent. . . .

*Id.* at 1116 (second emphasis added; citations omitted).

[27] Following our Court's opinion in *Barrett*, our General Assembly enacted Indiana Code section 35-41-3-11, which is commonly referred to as the "effects of battery" statute. *See Marley v. State*, 747 N.E.2d 1123, 1126 (Ind. 2001). That statute codified the defense that "the defendant was at the time of the alleged crime suffering from the effects of battery," with Indiana Code section 35-31.5-2-109 defining "[e]ffects of battery" as "a psychological condition of an

individual who has suffered repeated physical or sexual abuse inflicted by another individual" who is both the "victim" of the defendant's alleged offense and also is the defendant's spouse, parent, guardian, custodian, or cohabitant (or a former person in those roles). Thus, the effects-of-battery statute superseded our Court's opinion in *Barrett* by limiting that defense to circumstances in which the defendant's "victim" is also the person whose past course of conduct is alleged to have resulted in the defendant suffering from the effects of battery. I.C. § 35-41-3-11. However, our General Assembly's codification of the effects-of-battery defense had no impact on the *Barrett* panel's well-founded assessment that criminal offenses require the fact-finder to "resort to inferential reasoning" to ascertain whether the defendant was "subjectively aware" that she was engaging in a criminal act. 675 N.E.2d at 1116; *see also Armour v. State*, 479 N.E.2d 1294, 1297 (Ind. 1985) (rejecting an objective approach to determining a defendant's mens rea and holding that a "subjective standard [is] mandated by our culpability defin[ing] statute[s]").

[28] To raise the statutory defense of effects of battery, Indiana Code section 35-41-3-11 requires the defendant to allege one of two scenarios. First, the defendant can allege an insanity defense under I.C. § 35-41-3-6; that is, the defendant can allege that the effects of battery made the defendant not responsible as a result of a mental disease or defect that rendered the defendant unable to appreciate the wrongfulness of the alleged conduct. I.C. § 35-41-3-11(b)(1). Alternatively, the defendant can argue that the alleged criminal act was the use of justified reasonable force under Indiana Code section 35-41-3-2, which recognizes that a

person may use reasonable force, including deadly force, to protect oneself, a third party, or one's property.[5] I.C. § 35-41-3-11(b)(2).

[29] Following the enactment of the effects-of-battery statute, the State charged thirty-one-year-old Julie Marley with the murder of Donald Marley, who had been convicted of molesting Julie when she was fourteen years old. Julie sought to introduce medical expert testimony that, at the time she killed Donald, "she was not conscious of her actions due to post-traumatic stress disorder and dissociation," which conditions "stemmed largely from" Donald's prior molestations of her. Marley, 747 N.E.2d at 1126. Notably, there was no suggestion that Julie's killing of Donald had been the use of justified reasonable force under Indiana Code sections 35-41-3-2 and 35-41-3-11(b)(2).

[30] The State moved to exclude the evidence of Donald's molestations of Julie and the mental harms he had caused her on the ground that Julie had not properly alleged an insanity defense as required under Indiana Code section 35-41-3-11(b)(1). The trial court agreed that Julie's evidence could be admitted under the effects-of-battery statute only "for maintaining an insanity defense." Marley, 747 N.E.2d at 1126-27.

---

[5] In either the use-of-justified-reasonable-force or the insanity scenario, the effects-of-battery defense includes a notice requirement equivalent to the notice required to assert an insanity defense. See I.C. § 35-41-3-11(c). As with the insanity defense, there is no dispute that Brooks-Brown has not provided any notice of this defense.

Our Supreme Court affirmed the trial court's judgment and concluded that the effects-of-battery statute was intended to "require that battered women's syndrome evidence be limited" to insanity or the use of justified reasonable force. *Id.* at 1127-28. The Court further noted that "the legislative response to *Barrett* suggests that the General Assembly considered the *Barrett* defense to be in the nature of an insanity defense . . . ." *Id.* at 1128. As Julie's claim was "of the same sort," our Supreme Court held her evidence "was therefore properly . . . subject to the insanity statute." *Id.*

However, as it had in *McClain*, our Supreme Court again cautioned that "the definition of insanity if read broadly could embrace a wide variety of mental conditions that are not properly held subject to the insanity statute," such as disorders "that are not attributable to any mental disease or defect . . . ." *Id.* The Court then stated as follows:

> In contrast, we conclude that *the legislature has determined that, where the defendant claims that battered women's syndrome has affected her ability to appreciate the wrongfulness of her conduct, she must proceed under the insanity defense.* . . .
>
> Limiting the admissibility of battered women's syndrome evidence in this manner is consistent with well established principles of Indiana law. Over one hundred years ago, in *Sage v. State*, 91 Ind. 141, 145 (1883), this Court held that the current statutory scheme did not recognize a middle ground between sanity and insanity. Thus, insanity was recognizable as a defense, but not as a mitigating circumstance. Similarly, our current statutory scheme recognizes no "middle ground" between insanity and sanity. More recently, this Court summarized this

principle, stating that, "[i]n Indiana we do not recognize degrees of insanity." *Cardine v. State*, 475 N.E.2d 696, 698 (Ind. 1985) (quoting *Cowell v. State*, 263 Ind. 344, 348-49, 331 N.E.2d 21, 24 (1975)); *accord Holmes v. State*, 671 N.E.2d 841, 857-58 (Ind. 1996) (instruction to jury that evidence of mental state was properly offered to negate defendant's capacity to form requisite intent was erroneous). Rather, "within the ambit of the terms comprising the definition of legal insanity[,] complete mental incapacity must be demonstrated before criminal responsibility can be relieved." *Cowell*, 263 Ind. at 349, 331 N.E.2d at 24 (citations omitted). *In short, as a general proposition Indiana has long held that a defendant may not submit evidence relating to mental disease or defect except through an insanity defense.*

*Id.* (emphases added; alterations original to *Marley*). Thus, in *Marley* our Supreme Court was obliged to direct the defendant to present her effects-of-battery evidence under the insanity defense in accordance with our legislature's clearly stated intent.

[33] A panel of our Court also addressed an insanity-related attempt to invoke the effects-of-battery defense in *Green v. State*, 65 N.E.3d 620 (Ind. Ct. App. 2016), *trans. denied*. In *Green*, the defendant shot her ex-husband, with whom she still lived, five times while he slept; left the room to reload her weapon; and then returned to the room and shot him five more times. She then took steps to cover up the killing.

[34] The State charged her with murder. She initially filed the requisite notice of her intent to use effects-of-battery evidence to show that she did not appreciate the wrongfulness of her conduct, but she later withdrew that notice. Nonetheless, at

trial she sought to admit an out-of-state attorney's testimony as expert evidence that she suffered from the effects of battery, which testimony the trial court excluded. She was then convicted of murder.

[35] We affirmed the trial court's exclusion of the proffered testimony on appeal. *Id.* at 630-33. We noted that the out-of-state attorney was not qualified to provide expert testimony on the effects of battery. *Id.* We also noted that the defendant had withdrawn the notice of her intent to assert an effects-of-battery defense. *Id.*

[36] That background brings us to the instant case. Relying on *Marley* and *Green*, the State argues that the trial court here erred in not excluding Brooks-Brown's evidence challenging her mens rea. According to the State, *Marley* requires *any* "evidence relating to mental disease or defect" to be raised only "through an insanity defense." *See id.* As the State puts it, that means:

> A defendant who wants to claim that she could not form the requisite *mens rea* due to a trauma-induced abnormal mental condition may only do so through an insanity defense. She may not claim that a trauma-induced mental condition not rising to the level of insanity excuses her from criminal culpability.

Appellant's Br. at 11. The State also asserts that Brooks-Brown's circumstances "cannot be meaningfully distinguished from the facts of *Green*." *Id.*

[37] The State's position on the relevant law is incorrect for several reasons. First, the State's reliance on *Marley* and *Green* is misplaced. Our Supreme Court's analysis in *Marley* is expressly and exclusively focused on claims where the effects of battery suffered by the defendant are alleged to have resulted in a

mental disease or defect that made the defendant unable to appreciate the wrongfulness of her conduct. 747 N.E.2d at 1128. Further, that analysis was in accordance with clear legislative direction. *See id.* But Brooks-Brown has not alleged that she suffers from the effects of battery, let alone that any such effects have resulted in a mental disease or defect of any kind. Nor has our General Assembly defined being the victim of human trafficking as a species of insanity. And the facts of *Green* are not reasonably comparable to the facts before us in this case.

[38] Second, the State's assertion that Indiana law demands that all "trauma-induced mental condition[s]" being used to challenge the mens rea of a criminal allegation must be brought solely by way of an insanity defense is extremely overbroad. The effects-of-battery statute itself does not demand as much, allowing defendants to *either* assert that the effects of battery resulted in a mental disease or defect *or* that the effects of battery placed the defendant in a circumstance where she believed the use of justified reasonable force to have been necessary. I.C. § 35-41-3-11(b).

[39] Moreover, the State's expansive understanding of when the insanity defense should apply is expressly contrary to our Supreme Court's caution in both *Marley* and *McClain*. As our Supreme Court made clear in *Marley*, "the definition of insanity if read broadly could embrace a wide variety of mental conditions that are not properly held subject to the insanity statute." 747 N.E.2d at 1128. Like the circumstances in *McClain* that our Supreme Court held to not be an appropriate use of the insanity defense, here Brooks-Brown is

relying on an "induced condition," not a "mental disease or defect." 678 N.E.2d at 109. And, unlike the effects-of-battery circumstances in *Marley*, our General Assembly has not expressly defined the induced condition here to be one that must proceed by way of the insanity defense. *See* 747 N.E.2d at 1128. Accordingly, the insanity defense is not applicable here.

[40] The State's argument, if adopted, would fundamentally and improperly transform a wide range of evidentiary challenges into "insanity." *See id.* Indeed, like the argument rejected by our Supreme Court in *McClain*, adopting the State's argument here would require that a "successful" defense result in a "not responsible by reason of insanity" judgment. 678 N.E.2d at 109. That, in turn, would leave a sane human trafficking victim in custody pending commitment proceedings, which is absurd and antithetical to the purpose of the insanity defense. *See id.* The State's argument is thus contrary to law and amounts to concluding that trafficking victims are mentally diseased or defective. We reject the State's argument accordingly.

## 1.2 Brooks-Brown's proffered evidence is relevant to her subjective state of mind.

[41] Brooks-Brown's putative defense seeks to challenge the State's assertion that she knowingly or intentionally aided others in the robbery and felony murder of Smith. She intends to argue that she did not act knowingly or intentionally but, rather, merely out of acquiescence toward her alleged traffickers. Thus, she seeks to present evidence at trial to counter the State's evidence regarding the statutory element of her state of mind.

[42] As long as Brooks-Brown's proffered evidence is admissible under the Indiana Rules of Evidence, her evidence is entirely consistent with Indiana law. As our Supreme Court has long made clear, whether a defendant acts knowingly or intentionally is a question directed to the defendant's subjective state of mind. *Armour*, 479 N.E.2d at 1297. And, as we made clear in *Barrett*, "[p]roof of this subjective awareness requires resort to inferential reasoning to ascertain the accused's mental state." 675 N.E.2d at 1116. "Therefore, evidence or testimony regarding the accused's mental state is relevant to determine whether the accused [acted] knowingly or intentionally . . . ." *Id.*

[43] Further, we are not persuaded by the State's reliance on Indiana Code section 35-38-10-2. That statute provides a limited *post-conviction* remedy for inmates who have been convicted of an offense that did not result in bodily injury to another person where the inmate was "a trafficked person at the time" of the offense and "coerced" or "under the control of" another person at the time of the offense. I.C. § 35-38-10-2. We think that statute demonstrates a legislative intent commensurate with the language used: to provide a limited opportunity for post-conviction relief to certain inmates.

[44] Indeed, the limited legislative intent underlying Indiana Code section 35-38-10-2 is made clear by another statute. In particular, Indiana Code section 35-45-4-2(a) states in relevant part that a person who knowingly or intentionally offers or agrees to perform sexual intercourse with another person for money commits prostitution, which is either a Class A misdemeanor or a Level 6 felony. However, subsection (b) of that statute states that "[i]t is a defense" to an

allegation of prostitution "that the [defendant] was a victim or an alleged victim of an offense" of human trafficking. I.C. § 35-45-4-2(b) (citing I.C. §§ 35-42-3.5-1 to -1.4). Thus, when prostitution has been alleged, our General Assembly has provided a complete trial defense for alleged victims of human trafficking. *See also Anderson v. State*, 237 N.E.3d 714, 717-18 (Ind. Ct. App. 2024), *trans. not sought*. That is plainly more comprehensive than the relief available by way of the post-conviction process.

[45] Although not addressed by the parties in this appeal, we also acknowledge that the statutory defense of human trafficking provided for under Indiana Code 35-45-4-2(b) is not Brooks-Brown's putative defense. As we have explained, the statutory defense of human trafficking admits to the elements of prostitution—including the mens rea—but excuses culpability for the offense notwithstanding that admission. *Id.* Brooks-Brown's defense, in contrast, is not that she knowingly or intentionally engaged in robbery and felony murder but should be excused from those acts; her defense is that she did not have the state of mind required to commit those acts in the first instance.

## Conclusion

[46] For all of these reasons, we affirm the trial court's denial of the State's pretrial request to exclude Brooks-Brown's proffered evidence with respect to her subjective state of mind at the time of the alleged offenses. We express no opinion on the admissibility of any such evidence at trial under the Indiana Rules of Evidence.

Affirmed.

Bailey, J., concurs with separate opinion.
Altice, C.J., dissents with separate opinion.

ATTORNEYS FOR APPELLANT

Theodore E. Rokita
Attorney General of Indiana

Ellen H. Meilaender
Supervising Deputy Attorney General
Indianapolis, Indiana


ATTORNEY FOR APPELLEE

Lori S. James
Law Office of Lori S. James, P.C.
Rensselaer, Indiana

**Bailey, Judge, concurring.**

[48]     The central issue in this case is whether Brooks-Brown may present evidence to rebut the State's claim that she had acted with the requisite intent to commit the offenses. I fully agree with the lead opinion that Brooks-Brown's putative defense is "plainly not an insanity defense." *Slip op.* at 11. And I agree that her proffered evidence is relevant to her subjective state of mind.

[49]     However, I write separately because I believe that the statutory defense of human trafficking is relevant to our analysis. Indiana Code section 35-45-4-2(a) states in pertinent part that a person who knowingly or intentionally offers or agrees to perform sexual intercourse with another person for money commits prostitution, which is either a Class A misdemeanor or a Level 6 felony. However, subsection (b) of that statute states that "[i]t is a defense" to an allegation of prostitution "that the [defendant] was a victim or an alleged victim of an offense" of human trafficking. I.C. § 35-45-4-2(b) (citing I.C. §§ 35-42-3.5-1 to -1.4).

[50]     I acknowledge that the State has not formally charged Brooks-Brown with prostitution. However, the State charged her with aiding, inducing, or causing felony murder and aiding, inducing, or causing robbery resulting in serious bodily injury. And the State concedes on appeal that it charged Brooks-Brown as an accomplice based on its allegation that she "lured" Smith "to the scene under the false pretenses of an anticipated act of prostitution." Appellant's Br. at 14. In other words, while the State has not charged Brooks-Brown with

prostitution, the alleged act of prostitution is the nexus for charging accomplice liability. That is, in order to convict her under an accomplice liability theory, the State must prove that she aided, induced, or caused the felony murder and robbery by engaging in prostitution.

[51] It is of no moment whether the act of prostitution is the focus of the prosecutor's discretion or whether, as here, it is the link the prosecutor uses to support the charges. Under either scenario, a successful defense will excuse liability. Because the statute provides a human trafficking defense to counter any prostitution allegation that is the basis for criminal charges, it is immaterial whether the State actually charged her with prostitution or whether the alleged act is a component of another charge. I would therefore hold that Brooks-Brown's proffered evidence is admissible to support a statutory defense to human trafficking.

[52] While I agree with the lead opinion, I believe the foregoing establishes an additional rationale for the admission of her proffered evidence. Therefore, I concur.

**Altice, Chief Judge, dissenting.**

I agree with the State that Brooks-Brown may not – outside the confines of an insanity defense – present expert testimony on the effects of human trafficking for her stated purpose of establishing that she did not knowingly or intentionally act as an accomplice to the robbery and murder. Our Supreme Court has stated several times that we do not recognize degrees of insanity in Indiana. *E.g., Marley v. State*, 747 N.E.2d 1123, 1128 (Ind. 2001). The effect of the majority's decision here, however, creates a middle ground between sanity and insanity, opening the floodgates of evidence bearing on a defendant's mental condition – short of insanity – to show their "subjective state of mind" at the time of the crime.[6]

It is true that our Supreme Court has recognized that "the definition of insanity if read broadly could embrace a wide variety of mental conditions that are not properly held subject to the insanity statute." *Id*. (citing *McClain v. State*, 678 N.E.2d 104, 108 (Ind. 2001)). But I cannot agree with the majority's reading of *McClain* and *Marley* as somehow cautioning against "attempts by the State to pigeonhole all challenges to a defendant's **mens rea** into the defense of

---

[6] I also find Judge Bailey's additional rationale unpersuasive, as the plain language of Ind. Code § 35-45-4-2(b) limits the statutory affirmative defense of human trafficking to prosecutions for prostitution. The defense is found in the statute defining the crime of prostitution; not within the series of statutes under Ind. Code Chap. 35-41-3 setting out defenses relating to culpability. And it is of no moment that the State could have charged Brooks-Brown with prostitution. If it had, evidence that Brooks-Brown was a victim of human trafficking would have been admissible for the limited purpose of defending the prostitution charge, not to excuse culpability for robbery or murder.

insanity." *Slip op.* at 12 (emphasis supplied). In my view, the Court was speaking in terms of voluntariness, not mens rea. That is, in limited situations where evidence of a mental condition (or mental state affected by a medical condition) is used to establish unconscious, involuntary behavior committed by a person of sound mind, the defendant need not proceed under an insanity defense. *See id.* ("*McClain* staked out a **small area of mental states**, e.g., sleepwalking, epilepsy, and metabolic disorders, that are not attributable to any mental disease or defect but nevertheless negate the **voluntariness requirement**.") (emphases supplied); *McClain*, 678 N.E.2d at 108-09 (holding that automatism is not a species of the insanity defense and that evidence of such may be presented to dispute whether the defendant engaged in voluntary conduct, as required by Ind. Code § 35-41-2-1(a)); *Reed v. State*, 693 N.E.2d 988, 992 (Ind. Ct. App. 1998) ("[B]ecause the State must prove that a defendant engages in criminal conduct, voluntarily or by act of choice, in a conscious state of mind, automatism is relevant to determine whether a defendant voluntarily commits an offense.") (internal quotation marks omitted).

[55] Brooks-Brown does not seek to present evidence of automatism or any other condition that would cause her to engage in involuntary conduct. Rather, through expert testimony, she seeks to show that she lacked criminal intent due

to the circumstances and associated trauma of being a victim of human sexual trafficking.[7] In my view, *McClain* does not apply here.

[56] Nor do I believe that we should look to *Barrett v. State*, 675 N.E.2d 1112 (Ind. Ct. App. 1996), *trans. denied*, to counsel our decision here. In *Barrett*, the defendant sought to submit expert testimony regarding battered women's syndrome (BWS) to show that she did not knowingly or intentionally place her child – who died at the hands of the defendant's boyfriend – in a dangerous situation. The *Barrett* panel determined that BWS evidence was relevant as a defense to the mens rea element, explaining:

> As part of its burden of proof, the State must show that the accused was subjectively aware of a high probability that she placed the dependent in a dangerous situation. *Armour v. State*, 479 N.E.2d 1294, 1297 (Ind. 1985). Proof of this subjective awareness requires resort to inferential reasoning to ascertain the accused's mental state. *Hill v. State*, 535 N.E.2d 153, 154 (Ind.Ct.App.1989). Therefore, evidence or testimony regarding the accused's mental state is relevant to determine whether the

---

[7] In her report, Elizabth Schultz opines that Brooks-Brown was trafficked through "trauma-coerced attachment" and "use of psychological manipulation." *Appendix* at 99. Schultz notes that Brooks-Brown had experienced suicidal ideation, which is "a common response of someone who has experienced significant trauma" and is linked to "the emotional toll that sex trafficking can have on an individual, along with depression, hopelessness, anger, and rage." *Id.* at 103. Schultz also details violent episodes of battery that Brooks-Brown allegedly suffered at the hands of Leftridge, her romantic partner. The report discusses "pathological disassociation" and ultimately identifies Brooks-Brown as "a trafficking victim at the time of the homicide" who "repressed severe trauma and terror to appear acquiescent and even complicit in the crime" to avoid "life-threatening violence." *Id.* at 106. Schultz explained: "The fawn response demonstrated by [Brooks-Brown] is a learned response by victims to avoid further abuse by pleasing or acquiescing to the offender." *Id.*

accused knowingly or intentionally placed the dependent in a dangerous situation.

Here, Barrett offered the testimony of Gail Beaton, a social worker, to explain how BWS can affect a person's state of mind and perception of danger to her dependent. This testimony was relevant and necessary to determine Barrett's mental state and, therefore, whether she acted knowingly or intentionally in neglecting her dependent. Thus, the trial court erred in refusing to permit Barrett to present evidence regarding BWS.

*Id.* at 1116.

[57] The Indiana General Assembly responded to *Barrett* by enacting Ind. Code § 35-41-3-11, commonly known as the effects-of-battery statute, with the intended effect of requiring a defendant to comply with the insanity statute in order to present BWS evidence as to a defendant's mens rea. *See Marley*, 747 N.E.2d at 1128.

[58] In *Marley*, our Supreme Court noted that *Barrett* did not address whether the BWS evidence "bore on a species of insanity that triggered the procedural requirements of the insanity statute[.]" *Id.* at 1127. The Court observed that "[t]he inability to form a subjective appreciation of the effect of neglect of a dependant [sic] is within the literal terms of the insanity defense" and then held: "To the extent that *Barrett* suggests that [BWS] evidence is admissible on the issue of lack of intent or knowledge without compliance with the insanity statute, it is superseded by the 1997 legislation." *Id.* at 1127, 1128.

[59] Turning to the common law, the Court then explained why requiring defendants like Marley and Barrett to comply with the insanity statute made sense:

> Limiting the admissibility of [BWS] evidence in this manner is consistent with well established principles of Indiana law. Over one hundred years ago, this Court held that the current statutory scheme did not recognize a middle ground between sanity and insanity. Thus, insanity was recognizable as a defense, but not as a mitigating circumstance. Similarly, our current statutory scheme recognizes no middle ground between insanity and sanity. More recently, this Court summarized this principle, stating that, in Indiana we do not recognize degrees of insanity. Rather, within the ambit of the terms comprising the definition of legal insanity, complete mental incapacity must be demonstrated before criminal responsibility can be relieved. In short, as a general proposition Indiana has long held that a defendant may not submit evidence relating to mental disease or defect except through an insanity defense.

*Id.* (citations, quotation marks, and brackets omitted).

[60] The above language applies just as strongly here, where Brooks-Brown seeks to present evidence that she lacked criminal intent due to the circumstances and trauma of being a victim of human trafficking. To pursue this defense, I believe she must proceed under the insanity defense.[8] *See Marley*, 747 N.E.2d at 1128

---

[8] The majority rejects the State's contention that all trauma-induced mental conditions **being used to challenge the mens rea of a criminal allegation** must be brought by way of an insanity defense. In this regard, the majority notes that the effects-of-battery statute allows for use of evidence relating to the psychological effects of battery to establish self-defense, not just insanity. I would note, however, that self-

("Marley's claim of a 'dissociative state' as a result of battered women's syndrome ... is a claim that an abnormal condition has impaired the defendant's perception of the action taken."); *Green v. State*, 65 N.E.3d 620, 633 (Ind. Ct. App. 2016).

[61] Accordingly, I would reverse and remand with directions that Brooks-Brown is not permitted to offer expert testimony on the effects of human trafficking to challenge her mens rea except through an insanity defense.

---

defense cases do not involve a challenge to the mens rea element; rather the defense provides a justification for the crime, and "evidence which is clearly encompassed by the traditional bounds of an insanity defense is still not suitable for a self-defense claim." *Higgason v. State*, 183 N.E.3d 340, 345 (Ind. Ct. App. 2022) (observing that under the effects-of-battery statute, "a defendant's evidence that she does not appreciate the wrongfulness of her conduct, such as in circumstances of manic-episodes, schizophrenic breaks, and similar situations in which it is clear they are attempting to disprove their understanding of the wrongfulness of their conduct, are still prohibited from use outside of an insanity defense"); *see also Passarelli v. State*, 201 N.E.3d 271, 278 (Ind. Ct. App. 2023), *trans. denied*.